COMMONWEALTH vs. WILLIAM L. ALMON, THIRD.

No. 90-P-143.

Plymouth. October 15, 1990. - June 21, 1991.

Present: ARMSTRONG, SMITH, & JACOBS, JJ.

*Practice, Criminal*, Instructions to jury, Failure to make objection, Judicial discretion, New trial. *Evidence*, Fresh complaint, Corroborative evidence, Surrebuttal.

At a rape trial in which defense counsel had not requested an instruction to the jury on the limited purposes of fresh complaint testimony and did not object to its omission, the failure of the judge to instruct the jury that fresh complaint testimony by several prosecution witnesses could be used only for corroborative purposes created a substantial risk of a miscarriage of justice, requiring a new trial, where evidence of the defendant's guilt was not overwhelming, where the absence of the limiting instruction was sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error, and where it was inferable from the record that counsel's failure to object to the absence of the instruction was not simply a reasonable tactical decision. [724-726]

At a rape trial, the judge did not abuse his discretion either in denying the defendant's request to present surrebuttal testimony, or in denying the defendant's request to admit the complainant's diary in evidence; in addition, at a retrial, that portion in the medical records concerned with "Assessment" was not to be read. [726]

INDICTMENTS found and returned in the Superior Court Department on December 9, 1986.

The cases were tried before *Cortland A. Mathers*, J.

*Bruce Ferg* for the defendant.

*Mary O'Sullivan Smith*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A grand jury returned two indictments charging the defendant with (1) rape of a child by force on or about October 16, 1985 (G. L. c. 265, § 22A) and (2) rape of a child by force on or between November 1, 1984, and October 16, 1985. Both indictments named the same complainant, the defendant's stepdaughter. A jury trial commenced in Decem-

ber, 1987. A mistrial was declared when, after several days of deliberation, the jury failed to agree upon any verdicts. As a result of a second jury trial, the defendant was convicted on both indictments. He raises several issues on appeal, including a claim that the judge committed prejudicial error when he failed to give a limiting instruction on the use of fresh complaint testimony. We agree with the defendant and order a new trial.

We summarize the evidence introduced by the Commonwealth. The complainant, born in 1972, was seven years old when her mother married the defendant. After the marriage, the family consisted of the complainant, her younger sister, her older brother, the complainant's mother, and the defendant. Later, the defendant and the complainant's mother became parents of a daughter. In the household, the complainant had her own bedroom, the other two girls shared the bedroom next to the complainant's, and her brother slept in a room in the basement. The complainant's mother worked from 3:00 P.M. to 1:00 A.M. most evenings, and the defendant was responsible for the care of the children while the mother was at work.

The complainant testified that in 1983, when she was eleven years old, she was "scared" of the defendant. He was the disciplinarian in the family and would hit the complainant, her sisters, and her mother. When she was eleven years old, the defendant began to abuse her sexually. He would, on numerous occasions, put his "hands" in her vagina and his penis in her rectum. At first, these episodes occurred two or three times a week, then they increased in frequency to three and four times a week. She would often yell and cry on the occasions of abuse. Most times the complainant's sisters were home when the incidents occurred.

In October, 1985, the defendant's daughter by a previous marriage, age 17, moved into the house. She shared the complainant's bedroom. The incidents of sexual abuse became less frequent but did not cease.

On December 30, 1985, the defendant entered the victim's bedroom and fondled her breasts. Later, the complainant left

her home and went to her girl friend's home to spend the night. While there, she told her girl friend about the years of sexual abuse by the defendant. She had not told anyone previously about the sexual abuse because the defendant, on several occasions, had threatened to kill her if she disclosed what he was doing to her.

On January 1, 1986, the complainant's girl friend told her mother who, on the following day, drove the complainant to the local office of the Department of Social Services (DSS). There, the complainant told her story to William Barnes, a DSS investigator. She later told her story to two police officers and a nurse.

Barnes, two police officers, the complainant's girl friend, and the nurse all testified as fresh complaint witnesses. In addition, the nurse read into the record the results of a physical examination of the complainant. The examination revealed that the complainant's rectum and genitals were "normal" with "no lesions."[1]

The defendant, who did not testify, called eight witnesses, six of whom were related to either the defendant or the complainant. Various family members, including the complainant's brother, sister, mother, uncle, and grandmother, all testified that the complainant and the defendant enjoyed a normal father-daughter relationship. The complainant's brother and sister testified that they were not afraid of the defendant and that they neither observed nor experienced any physical abuse at the hands of the defendant. They stated that the defendant and the mother shared disciplining the family, and, on occasion, the defendant had "spanked" the complainant. The mother gave similar testimony. The sister also testified that, because her bedroom was next to the complainant's, she would be able to hear any yelling or screaming from that room. She stated that she did not hear

---

[1] A doctor testified, on behalf of the defendant, that, under the circumstances presented by the complainant in her testimony, he would expect to find, during an examination, visible lacerations and tissue damage in the rectal area. In rebuttal, the Commonwealth produced a doctor who opined that, in the circumstances, rectal intercourse "would not necessarily produce injury."

any such noises from the room during the period covered by the complainant's testimony.

1. *Failure of judge to give limiting instructions as to fresh complaint testimony.* Appellate counsel claims that the judge committed prejudicial error by failing to instruct the jury on the limited purposes of fresh complaint testimony. The defendant's trial counsel had not requested such instruction and did not object to its omission.[2]

Here, five of the six witnesses produced by the Commonwealth in the presentation of its case gave fresh complaint testimony. When fresh complaint testimony is introduced in evidence, a defendant "is entitled to have it impressed on the jury that the [fresh complaint] testimony may be used for corroborative purposes only; it cannot be used as hearsay to fill gaps in the prosecution's case." *Commonwealth* v. *Bailey,* 370 Mass. 388, 396 (1976).[3] On the basis of this record, it was error for the judge not to instruct the jury on the limited purposes of the fresh complaint testimony.

Failure of defense counsel to object to the error is of significance in our analysis of whether there shall be a new trial. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). Our appellate courts have recognized, however, that "an error that has not been called to the judge's attention may be so serious that we ought to exercise our 'rarely used power' to set aside the verdict in order to prevent a miscarriage of justice." *Commonwealth* v. *Claudio,* 405 Mass. 481, 486 (1989), quoting from *Commonwealth* v. *Freeman,* 352 Mass.

---

[2]Trial counsel did not object to the introduction of the fresh complaint evidence. On appeal, appellate counsel limits his claim to the judge's failure to give an instruction as to the limited purposes of such evidence.

[3]In *Bailey,* the trial judge, like the judge here, failed to instruct the jury on the limited purposes of fresh complaint testimony. The defendant in the *Bailey* case did not, however, raise the issue on appeal, and the court did not consider the question of the omission of the instruction.

556, 563-564 (1967). "The test is whether there is a substantial risk of a miscarriage of justice." *Ibid.*

"[A]t least three elements are preconditions for the application of the *Freeman* exception: First, there must be a genuine question of guilt or innocence. Where evidence of guilt is strong and one-sided, it is generally concluded that no substantial risk exists of a miscarriage of justice. Second, the error must be sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error. Third, it must be inferable from the record that counsel's failure to object was not simply a reasonable tactical decision." *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986) (citations and footnote omitted).

Here, the evidence of the defendant's guilt was not overwhelming; apart from the complainant's testimony, there was no evidence of the defendant's guilt. Unlike other cases of this type, the physical examination of the complainant did not corroborate her testimony that over a period of years the defendant relentlessly sexually abused her. Contrast *Commonwealth* v. *McNickles*, 22 Mass. App. Ct. 114, 119, 124 (1986)(no limiting instructions given as to fresh complaint testimony, but no substantial risk of a miscarriage of justice because evidence against defendant was overwhelming). Also, in the context of the entire trial and considering the amount of fresh complaint evidence used by the Commonwealth to support its case, the error was significant. On this record, the absence of an instruction directing the jury's attention to the limited purpose of fresh complaint evidence — corroboration of a complainant's testimony only — makes it at least plausible that the verdicts might have been different had the instruction been given.

The Commonwealth claims that trial counsel did not seek the limiting instruction for tactical reasons. It argues that counsel highlighted several conflicting statements contained in the fresh complaint testimony of the Commonwealth's witnesses and, therefore, may have acquired a tactical advantage in having the various statements, including the conflict-

ing details, admitted for their full weight. We fail to see in this record any tactical reasons for the failure of counsel to request the instruction. The defendant, if the instruction had been given, would have had the benefit of both the inconsistencies and an instruction to the jury that such evidence was admitted only for corroboration of the complainant's testimony. The credibility of that testimony was the main issue in the case.

In sum, we conclude that the failure of the judge to give the instruction created a substantial risk of a miscarriage of justice, and a new trial is required. We wish to emphasize, however, that we do not hold that the failure of a judge to instruct a jury on fresh complaint testimony, when such instruction is warranted, mandates reversal. Under the "substantial risk of a miscarriage of justice" standard, each determination is made on a case-by-case basis.

2. *Other issues.* We briefly discuss other issues that may arise on retrial. The judge did not abuse his discretion in denying the defendant's request to present surrebuttal testimony. That testimony was cumulative and collateral in nature. *Commonwealth* v. *Durning,* 406 Mass. 485, 495 (1990). Further, the denial of the defendant's request to admit the complainant's diary in evidence was within the judge's discretion. At retrial, that portion in the medical records that is concerned with "Assessment" should not be read.

3. *Conclusion.* After his convictions on both indictments, the defendant was sentenced on the indictment that charged him with rape of a child by force on or between November 1, 1984, and October 16, 1985. That judgment is reversed and the verdict set aside. The indictment that charged him with rape of a child by force on or about October 16, 1985, was placed on file with his consent. "Ordinarily, we do not consider appeals in cases placed on file . . . [but t]he conviction on the filed indictment is . . . subject to the same weakness as is the conviction on the indictment on which he was sentenced." *Commonwealth* v. *Nowells,* 390 Mass. 621, 629-630 (1983). *Commonwealth* v. *Stracuzzi, ante* 161, 162 n.1 (1991). The defendant, on request to the Superior Court

within thirty days from the date of this opinion, may also have a new trial on the filed indictment. See *Commonwealth v. Ragonesi*, 22 Mass. App. Ct. 320, 326 n.8 (1986).

*So ordered.*