## COMMONWEALTH *vs.* CHARLES VIEUX.

No. 95-P-1569.

Essex. September 13, 1996. - October 30, 1996.

Present: WARNER, C.J., ARMSTRONG, & PERRETTA, JJ.

*Eavesdropping. Practice, Criminal,* Assistance of counsel, Instructions to jury. *Evidence,* Fresh complaint. *Rape.*

In a criminal case, a witness's having used an extension telephone to eavesdrop on a call between her mother and the defendant fell within the "ordinary course of business" exception of 18 U.S.C. § 2510(5)(a)(i), and was not violative of §§ 2510-2520 of that statute or of G. L. c. 292, § 99: as a consequence, defense counsel's failure to move on those grounds to suppress the witness's testimony of what the defendant had then said was not ineffective assistance of counsel. [527-533]

At a rape trial, the judge's failure to give a final instruction on fresh complaint did not constitute reversible error where the judge fully and correctly instructed the jury during the testimony of two of the three fresh complaint witnesses, where fresh complaint evidence did not constitute the major part of the Commonwealth's case or fill gaps in it, and where the defendant had not requested such instructions [533-535]; further, defense counsel's failure to request final fresh complaint instructions did not amount to ineffective assistance of counsel [535].

INDICTMENT found and returned in the Superior Court Department on August 31, 1994.

The case was tried before *Richard E. Welch, III,* J.

*Peter M. Onek* for the defendant.

*Nicole M. Procida,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. The defendant was convicted by a Superior Court jury of rape, G. L. c. 265, § 22. On appeal he alleges that: (1) his trial counsel was ineffective in failing to move to suppress the testimony of one of the Commonwealth's witnesses; and (2) the trial judge's failure to provide an instruction on fresh complaint in his final charge created a substantial risk of a miscarriage of justice. We affirm.

1. *Ineffective assistance of counsel.* To prevail on a claim of ineffective assistance of counsel a defendant must establish: (1) that his representative's performance reflected "serious incompetency, inefficiency, or inattention . . . falling measurably below that which might be expected from an ordinary, fallible lawyer," *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974); and (2) that these shortcomings deprived him of "an otherwise available, substantial ground of defence" or in some other way materially affected the outcome of his trial. *Ibid.* See also *Commonwealth* v. *Fanelli,* 412 Mass. 497, 503 (1992). Consonant with these principles, failing to pursue a futile tactic does not amount to constitutional ineffectiveness. Here, a motion to suppress likely would have done little to advance the defendant's cause.

At trial, the victim's sister, Marquise, was permitted to testify concerning comments made by the defendant during a telephone call. The remarks[1] were overheard by Marquise as she surreptitiously listened in on a conversation between her mother and the defendant on an extension phone in her home. The defendant claims that by secretly listening in on his conversation with the victim's mother, Marquise violated the Federal wiretap statute, 18 U.S.C. §§ 2510-2520 (1994), as well as the cognate Massachusetts statute, G. L. c. 272, § 99. The defendant further avers that notwithstanding the fact that Marquise was not a public official (or acting at the direction of a public official), both statutes bar admission of the fruits of Marquise's allegedly illegal actions at the defendant's criminal trial.

Although there is some uncertainty about the scope of the statutes' application, it appears that, in some situations at least, wiretap evidence unlawfully obtained by private persons may be subject to exclusion. See *Heggy* v. *Heggy,* 944 F.2d 1537, 1540 (10th Cir. 1991), cert. denied, 503 U.S. 951 (1992) (reference to "any person" in portion of 18 U.S.C. §§ 2510-2520 relating to statute's scope of application construed to include private citizens); *Commonwealth* v. *Santoro,* 406 Mass. 421, 423 (1990) (G. L. c. 272, § 99 "forbids the interception of certain oral communications by private

---

[1]Marquise testified that after her mother had hung up (and so, presumably, the defendant thought no one was on the line), the defendant laughingly stated: "Why shouldn't she let me marry her? Why shouldn't she do it the Haitian way? I got a little pussy so . . . ."

individuals"). Whether this principle applies here, however, need not be decided. In the circumstances of this case, we conclude that Marquise's actions did not amount to an illegal wiretap, either for the purposes of 18 U.S.C. §§ 2510-2520, or G. L. c. 272, § 99. The remedial provisions of those laws, therefore, need not be considered.

While under both the State and Federal statutes,[2] a telephone extension may constitute an "intercepting wire device," both laws have created an exception for standard telephone instruments furnished to a subscriber by a communications common carrier and used by the subscriber in his or her "ordinary course of business." See 18 U.S.C. § 2510 (5)(a)(i); G. L. c. 272, § 99(B)(3). This "ordinary course of business" provision, while construed somewhat narrowly in the workplace context, see *United States* v. *Murdock*, 63 F.3d 1391, 1396 (6th Cir. 1995), cert. denied, 116 S. Ct. 1672 (1996), has been interpreted expansively in the context of a subscriber's residence. We turn first to the Federal statute.

Although the issue has not been squarely addressed by either the Supreme Court or the First Circuit, the defendant has not brought to our attention, nor have we found, a single instance in which any Federal court has ever held that 18 U.S.C. §§ 2510-2520 is violated where a family member merely listens in on (but does not record) the telephone conversation of another family member through the use of a standard residential extension phone. For example, in *Anonymous* v. *Anonymous*, 558 F.2d 677 (2d Cir. 1977), the court observed that: "Appellee's activity would clearly not be prohibited if it consisted merely of listening into his wife's and daughter's telephone conversations from an extension phone in his apartment. Congress explicitly exempted such activity from coverage by the Act. See 18 U.S.C. § 2510(5)(a)(i). Such a use of an extension phone in appellee's own home would certainly be in the 'ordinary course of [the user's] business' " (footnote omitted). *Id.* at 678-679. The decision in *Anonymous* was based, in part, on a review of the legislative history of 18 U.S.C. §§ 2510-2520, which evinces a

[2]General Laws c. 272, § 99, is not preempted by 18 U.S.C. §§ 2510-2520 pursuant to 18 U.S.C. § 2516(2). For a full discussion of the preemption issue see *Commonwealth* v. *Vitello*, 367 Mass. 224, 249-251 (1975).

clear attempt to exempt benign and unsophisticated forms of intra-familial eavesdropping in the home.[3] *Id.* at 679.

Similarly, in *Newcomb* v. *Ingle*, 944 F.2d 1534 (10th Cir. 1991), cert. denied, 502 U.S. 1044 (1992), the court concluded that a mother did not violate 18 U.S.C. §§ 2510-2520 by listening in on the conversations of her son using an extension phone in her home. In reaching its decision, the court reasoned:

> "[T]he interception at issue here is not reached by [18 U.S.C. §§ 2510-2520]. The interception of a family member's telephone conversations by use of an extension phone in the family home is arguably permitted by a broad reading of the exemption contained in 18 U.S.C. § 2510(5)(a)(i) . . . . '[W]e think the (5)(a)(i) exemption is indicative of Congress's intention to abjure from deciding a very intimate question of familial relations, that of the extent of privacy family members may expect within the home.' "

*Id.* at 1536, quoting from *Simpson* v. *Simpson*, 490 F.2d 803, 809 (5th Cir.), cert. denied, 419 U.S. 897 (1974).

The Seventh Circuit, in *Scheib* v. *Grant*, 22 F.3d 149, 153-154 (1993), cert. denied, 513 U.S. 929 (1994), expressly relied upon this portion of *Newcomb* in concluding that a father had not violated 18 U.S.C. §§ 2510-2520 by eavesdropping on conversations between his son (who lived with his father) and the child's mother (from whom the father was divorced) using an extension phone. "We cannot attribute to Congress the intent to subject parents to criminal and civil penalties for [listening in on] their minor child's phone conversations out of concern for the child's well-being." *Id.* at 154.

Similar results have been reached in a large number of other Federal decisions. See *Lizza* v. *Lizza*, 631 F. Supp. 529, 532 n.5 (E.D.N.Y. 1986) ("[18 U.S.C. §§ 2510-2520] exempts

---

[3]During hearings on 18 U.S.C. §§ 2510-2520, Professor Herman Schwartz stated: "I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem." *Anonymous,* 558 F.2d at 679, quoting from Hearings on the Anti-Crime Program Before Subcomm. No. 5 of the House Judiciary Comm. 90th Cong., 1st Sess. 901 (1967).

from coverage under the Act the ordinary use of an extension phone to listen in on a conversation"). See also *Simpson* v. *Simpson,* 490 F.2d at 805 (refusing to apply 18 U.S.C. §§ 2510-2520 to a broad range of types of intra-family eavesdropping); *Perfit* v. *Perfit,* 693 F. Supp 851, 855-856 (C.D. Cal. 1988) (applying extension phone exception for merely listening).

Likewise, State courts that have considered the question have reached similar results. In *State* v. *Telles,* 139 N.H. 344, 347-348 (1995), for example, the Supreme Court of New Hampshire (in a factual context very similar to the present case) concluded that a witness's use of an extension phone to eavesdrop on her houseguest's telephone conversations with the defendant fell within the exception defined by § 2510(5)(a)(i), and so the witness's testimony concerning the contents of those calls was admissible at the defendant's criminal trial. In reaching its decision, the court placed special emphasis on the fact that the witness "did not record the conversations." *Id.* at 348 (Johnson, J., concurring).

While, as noted, the First Circuit has not addressed the question of eavesdropping between family members on a residential extension phone, its decisions construing other provisions of 18 U.S.C. §§ 2510-2520 suggest that it would reach the same result as these cited decisions. For example, in *United States* v. *Miller,* 720 F.2d 227 (1st Cir. 1983), cert. denied, 464 U.S. 1073 (1984), the court stated that 18 U.S.C. §§ 2510-2520 "was directed against the use of sophisticated electronic equipment, and not against . . . rudimentary material. Under the statutory definitions, [a co-conspirator's] use of the phone receiver to overhear the conversation did not constitute a proscribed 'interception' " (citation omitted) (footnote omitted). *Id.* at 228-229. Along the same lines, in *Williams* v. *Poulos,* 11 F.3d 271, 280 (1st Cir. 1993), the First Circuit stressed the difference between using sophisticated wiretap equipment and a standard-issue telephone for the purposes of determining whether a particular case of eavesdropping constituted a violation of 18 U.S.C. §§ 2510-2520. See also *Griggs-Ryan* v. *Smith,* 904 F.2d 112, 116 (1st Cir. 1990) (emphasizing that not every overheard telephone conversation constitutes a violation of the Federal law).

It is true, as the defendant points out, that some courts have been reticent to exempt *all* forms of eavesdropping by

means of residential extension phones from the purview of 18 U.S.C. §§ 2510-2520. Specifically, in the context of divorce litigation, 18 U.S.C. §§ 2510-2520 has been applied to forbid the use of a residential phone by one spouse to make *recordings* of the other spouse's private conversations. However, as noted above, we have found no reported Federal decision in which there was deemed to be a violation of 18 U.S.C. §§ 2510-2520 in the residential extension phone context where no recording was made. See *United States* v. *Murdock,* 63 F.3d at 1395 n.7; *United States* v. *Jones,* 542 F.2d 661, 673 n.24 (6th Cir. 1976) (on "vast difference between overhearing someone on an extension and installing an electronic listening device to monitor all incoming and outgoing calls"). Moreover, apart from instances of interspousal spying, we have found no case in which the use of an extension phone to listen in on the calls of another member of the household has been deemed to violate 18 U.S.C. §§ 2510-2520 — whether or not a recording was made. See *Scheib* v. *Grant,* 22 F.3d at 154.

In his brief, the defendant attacks the notion that there is any meaningful distinction between using an extension phone merely to listen in on a call and situations in which a recording device is employed. We disagree. Without doubt, both potentially involve invasions of privacy. However, as suggested in *Miller,* 720 F.2d at 228-229, 18 U.S.C. §§ 2510-2520 is aimed at deterring a particular evil: the use of increasingly sophisticated electronic surveillance equipment for the purpose of eavesdropping on telephone conversations. A person who listens in on a residential extension phone simply does not pose the same threat to telecommunications security as a high-tech snooper. See *United States* v. *Murdock,* 63 F.3d at 1394.

Absent a recording device, an eavesdropper on a residential line must be physically present in the home at the time of a particular call to intercept the conversation. See *People* v. *Otto,* 2 Cal. 4th 1088, 1106-1107, cert. denied, 506 U.S. 956 (1992). As a result, his opportunities are sharply diminished, and his chance of being detected is high.[4] Further, such situations are likely to involve only regular members of the

---

[4]These conclusions are echoed in *People* v. *Otto,* 2 Cal. 4th at 1106, the principal case relied upon by the defendant. There, in considering whether 18 U.S.C. §§ 2510-2520 barred the use of a husband's tape recordings of

household, as between whom there is often a diminished opportunity for maintaining the privacy of conversations in the first place. Such considerations appear to be the basis for Congress's limitation of the "ordinary course of business" exception of 18 U.S.C. § 2510(5)(a)(i) to situations involving only basic telephone equipment and not appurtenant devices (e.g., tape recorders).[5] See *United States* v. *Jones,* 542 F.2d at 673 n.24; *Sanders* v. *Robert Bosch Corp.,* 38 F.3d 736, 740 (4th Cir. 1994); *United States* v. *Murdock,* 63 F.3d at 1394-1396.

In view of the Federal case law, we conclude that Marquise's use of an extension phone in her home to eavesdrop on the call between her mother and the defendant — an act motivated by understandable concern for her sister — did not violate 18 U.S.C. §§ 2510-2520. Further, to the extent that the provisions of G. L. c. 272, § 99, relating to the use of extension phones were modeled on the Federal law, see *Campiti* v. *Walonis,* 611 F.2d 387, 395-396 (1st Cir. 1979), we likewise hold that Marquise's actions did not violate § 99. As the court observed in *Commonwealth* v. *Vitello,* 367 Mass. at 251:

> "[G. L. c. 272, § 99] in major portion matches section for section the provisions of [18 U.S.C. §§ 2510-2520]. Admittedly, the phraseology of [the Massachusetts statute] is not word for word that of the Federal act. However, in substance the requirements of the Massachusetts statute are the same as those of [18 U.S.C. §§ 2510-2520], as the legislative history of [the Federal law] shows that they should be."

Bolstering our conclusion in this regard is the near exact coincidence of the language in 18 U.S.C. § 2510(5)(a)(i), and G. L. c. 272, § 99 (B) (3), relating to the applicability of the

his wife's conversations in the wife's trial for the husband's murder, the Supreme Court of California concluded that "[t]he differences between casually overhearing part of a conversation on an extension phone and intentionally wiretapping all incoming and outgoing calls [with a tape recorder] are substantial . . . ."

[5]The "ordinary course of business" exception of 18 U.S.C. §§ 2510(5)(a)(i) extends only to "any telephone or telegraph instrument . . . furnished to the subscriber or user by a provider of wire or electronic communication service . . . ."

law to extension phones.[6] Moreover, the Supreme Judicial Court gave a fairly strong indication of its approach to eavesdropping in the home in *Commonwealth* v. *Todisco,* 363 Mass. 445, 452 (1973), in which the court observed that "[t]he clear and obvious legislative intent [of G. L. c. 272, § 99] was to prevent the illegal use of devices external and extraneous to the regular telephone equipment." A residential extension phone like the one used here by Marquise does not fall into this category.

Since there were no statutory violations, it is impossible to conclude that defense counsel's failure to press a motion to suppress Marquise's testimony "deprived the defendant of an otherwise available, substantial ground of defence," a necessary prerequisite for relief where ineffective assistance of counsel is alleged. See *Commonwealth* v. *Saferian,* 366 Mass. at 96. The defendant's claim of ineffective representation, therefore, fails.[7]

2. *Fresh Complaint.* When fresh complaint testimony is admitted, a defendant is entitled to have the jury informed that such evidence may be used for corroborative purposes only. *Commonwealth* v. *Bailey,* 370 Mass. 388, 396 (1976); *Commonwealth* v. *Almon,* 30 Mass. App. Ct. 721, 724 (1991). Moreover, while not a strict requirement, it is generally recommended that the judge provide the limiting charge at the same time the fresh complaint evidence is introduced. *Commonwealth* v. *Licata,* 412 Mass. 654, 660 (1992). In conformity with this convention, the judge here charged the

---

[6]The Federal statute exempts telephone equipment "furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and used by the subscriber or user in the ordinary course of its business . . ." while the State exemption applies to equipment "furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business. . . ."

[7]We note in passing that even had we concluded that Marquise's testimony was improperly admitted, we likely would have deemed the error harmless. See *Commonwealth* v. *Schulze,* 389 Mass. 735, 741 (1983); *Commonwealth* v. *Daggett,* 416 Mass. 347, 352 n.5 (1993) (distinguishing standards of review for claims of constitutional versus nonconstitutional error). The defendant admitted to investigating officers that he had intercourse with the victim, and Marquise's contested testimony did no more than confirm that fact. Although the defendant used vulgar language during the telephone conversation, see n.1 *supra,* nothing that he said bore on the issue of consent, the key issue in dispute at trial.

jury at length on the proper use of fresh complaint evidence during the testimony of two of the three fresh complaint witnesses (without any objection by the defendant, no charge was given with respect to the very cursory testimony of a third corroborating witness). The defendant does not quibble with either the timing or content of these instructions, nor would he have a proper basis for doing so.

Rather, the defendant here assigns error to the lack of any final instruction on the use of fresh complaint evidence. However, while providing such an instruction is the preferred course, it is not absolutely essential. As the court previously has concluded, where, as here, the judge fully instructs the jury about fresh complaint principles during trial, the fresh complaint evidence does not constitute the major part of the Commonwealth's case, the evidence is not used to fill gaps in the prosecution's case, and — perhaps most important — no final instruction is requested by the defense, the failure to provide a final charge sua sponte does not constitute reversible error. *Commonwealth* v. *Lanning,* 32 Mass. App. Ct. 279, 287-288 (1992). See also *Commonwealth* v. *Clark,* 20 Mass. App. Ct. 392, 394-395 (1985).

Despite the defendant's contentions to the contrary, the present situation differs substantially from the facts of *Commonwealth* v. *Almon,* 30 Mass. App. Ct. at 724-726, upon which the defendant heavily relies. There, the decision to reverse the defendant's conviction on the basis of the judge's omission of a final fresh complaint instruction expressly was predicated upon the fact that (1) there were an unusually large number of corroborating witnesses, each of whom provided detailed testimony, see *Commonwealth* v. *Licata,* 412 Mass. at 659-660 (relating to dangers of "piling on" fresh complaint testimony); and (2) the Commonwealth's case was very weak. These same circumstances, however, were not present here. As noted, only two witnesses presented any detailed fresh complaint evidence at trial. Moreover, unlike the defendant in *Almon,* here the defendant's own admissions left little doubt that intercourse had occurred.

Likewise, *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 761-762 (1995), also relied upon by the defendant, is inapplicable. There, the judge omitted contemporaneous instructions to the jury and then compounded his error by giving an incomplete description of the use of fresh complaint evidence

in his final charge. In *Trowbridge*, therefore, the jury never were properly instructed on the issue. Such was not the case here. The judge's contemporaneous instructions were flawless. We also note that the decision to reverse in *Trowbridge* was not grounded solely on the error in fresh complaint instructions but rather was the result of an accumulation of errors. *Trowbridge*, like *Almon*, does not control our decision.

As noted, defense counsel failed to object to the trial judge's omission. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979). While errors not objected to at trial may provide a basis for reversal, this "power . . . is rarely exercised," *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987), and only where a substantial risk of a miscarriage of justice is posed, see *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). After a careful review of the record, we conclude that none exists in this case.

Finally, the defendant has reasserted his argument relating to the use of fresh complaint evidence at his trial under the rubric of ineffective assistance of counsel, i.e., that his trial advocate fell below the performance standards delineated in *Commonwealth* v. *Saferian*, 366 Mass. at 96, by failing to object to the lack of a fresh complaint instruction in the judge's final charge. However, in *Commonwealth* v. *Curtis*, 417 Mass. 619 (1994), the court concluded that the substantial risk analysis embodied in *Freeman* is functionally equivalent to the test contained in *Saferian* for determining whether putative attorney error requires a new trial. Where a defendant is not entitled to relief under one standard, he is likewise entitled to no remedy under the other. *Commonwealth* v. *Curtis*, 417 Mass. at 624 n.4. Accordingly, having already determined that the defendant is not entitled to any relief for the alleged trial errors under *Freeman* principles, we need not consider them again.

*Judgment affirmed.*