COMMONWEALTH vs. JOHN F. SCULLIN.

No. 96-P-1745.

Plymouth. October 29, 1997. - November 25, 1997.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Practice, Criminal,* Assistance of counsel, Instructions to jury. *Constitutional Law,* Assistance of counsel. *Evidence,* Fresh complaint, Prior misconduct.

At the trial of an indictment alleging rape of a child in which credibility was the sole issue, there was no apparent reasonable tactical basis for defense counsel's failure to object to fresh complaint testimony or to the Commonwealth's argument based on that evidence, or for counsel's failure to have requested instructions on fresh complaint: where the evidence would likely have been excluded as stale if the defendant had objected and, in any event, where the defendant would have been entitled to appropriate instructions, the defendant demonstrated that he had received ineffective assistance of counsel. [11-14]

At the trial of an indictment alleging rape of a child, the judge did not err in admitting evidence that the defendant had sexually assaulted the same victim some two and one-half years earlier than the indictment alleged, which was probative of the defendant's passion or emotion toward the victim or demonstrated a pattern of conduct, and the lapse of time did not render the evidence inadmissible by reason of remoteness. [15-16]

INDICTMENT found and returned in the Superior Court Department on June 13, 1994.

The case was tried before *Patrick F. Brady,* J.

*Edward B. Gaffney* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of rape of a child, G. L. c. 265, § 23. On appeal, he alleges that (1) the trial judge improperly admitted evidence of the defendant's prior bad acts, and (2) he was deprived of the effective assistance of counsel. On the basis of the defendant's second argument, we reverse.

We briefly summarize the evidence presented at trial. The

defendant, the father of the victim, and the victim's mother were divorced in 1987. During December of that year, the victim, then almost ten years old, visited the defendant in his separate home. The victim testified that during that visit, the defendant touched her breasts and vagina as she lay in bed with the defendant.

After that incident, the victim continued to visit the defendant periodically. She testified that a second assault occurred sometime in December of 1990, when she was twelve years old. As on the previous occasion, the defendant began to touch the victim's breasts and vagina as she lay next to him in bed. This time, however, the defendant had vaginal intercourse with the victim.

Approximately two years later, the victim reported her father's sexual assaults to her mother. After meeting with a psychologist, she described both instances of abuse.[1] The victim told her mother that, although she had not resided with the defendant for nearly five years, she nonetheless feared that he might harm her if she revealed what had occurred.

Before trial, the Commonwealth filed a motion in limine to obtain permission to introduce alleged fresh complaint testimony of one of the victim's friends, as well as evidence of the 1987 assault (the Commonwealth's case was premised solely on the 1990 assault). The judge deferred action on the Commonwealth's motion until trial, ultimately excluding the fresh complaint evidence, but admitting the evidence of the earlier incident.

As noted, the Commonwealth sought, by way of a pretrial motion in limine, to introduce the testimony of one of the victim's friends, Mandy Yater, for the purpose of establishing that the victim had made a "fresh complaint" after the 1987 assault. The judge deferred ruling on this motion until trial. With the question of its admissibility deferred, defense counsel decided to refer to Yater's potential testimony in his opening statement. Further, the victim was permitted, without objection from defense counsel, to testify that she had made a report of the 1987 incident to Yater, reciting the basic details of that conversation. Defense counsel made no request for a limiting instruction, i.e., a fresh complaint instruction — either at the time of the victim's testimony concerning her report to Yater, or

---

[1]At trial, the victim also alluded to other instances of abuse, but was unspecific about the number and timing of those events.

at the conclusion of trial. Finally, defense counsel did not object when the prosecutor again referred to the victim's conversation with Yater in his closing. Represented by new counsel on appeal, the defendant alleges that these actions, in the aggregate, constituted ineffective representation by his trial counsel. We agree.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that his representative's performance reflected "serious incompetency, inefficiency, or inattention . . . falling measurably below that which might be expected from an ordinary, fallible lawyer," *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974); and (2) that these shortcomings deprived him of "an otherwise available, substantial ground of defence" or otherwise materially affected the outcome of his trial. *Id.* at 96. See *Commonwealth* v. *Fanelli*, 412 Mass. 497, 503 (1992). We consider, in turn, each of those elements.

As to performance: Defense counsel admittedly was left in a difficult position when the trial judge failed to rule on the admissibility of Yater's testimony before trial. In the circumstances, it arguably may have been reasonable to make some mention of the potential evidence in order to defuse its inculpatory power in the event that it emerged later. See *Commonwealth* v. *Hurley*, 32 Mass. App. Ct. 620, 621 (1992) (reasonable for defense counsel to explore damaging impeachment evidence on direct examination in anticipation of prosecutor introducing same evidence during cross-examination). At the same time, however, defense counsel made no effort whatsoever to exclude mention of Yater's testimony until the issue was resolved — a curious omission for which we can see no obvious explanation.[2] Similarly, there was no apparent reasonable tactical basis for failing to object when the victim testified regarding her report to Yater of the 1987 incident. Such testimony, while not typical fresh complaint evidence (i.e., it was not related by a third party to whom the report was made), nonetheless is evidence of an out-of-court statement corroborating an allegation of rape, and so was admissible here, if at all, only under the rubric of fresh

---

[2] In fact, the judge specifically asked defense counsel during a hearing on the Commonwealth's motion in limine whether he would object to the prosecutor mentioning the report to Yater in her opening statement, and defense counsel stated that he would have no objection.

complaint.[3] See *Commonwealth* v. *Izzo*, 359 Mass. 39, 42-43 (1971) (victim's own prior written statement describing assault admissible as fresh complaint). See also *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898) (victim's testimony that she had reported circumstances of rape to her mother shortly after assault deemed fresh complaint evidence); *Commonwealth* v. *Ellis*, 319 Mass. 627, 629 (1946) (victim's testimony that she had reported sexual assault to mother admissible as fresh complaint). Compare *Commonwealth* v. *Leroux*, 12 Mass. App. Ct. 886, 887 (1981) (admission of victim's testimony regarding the details of her own report of rape permissible where proper limiting instruction provided). Finally, there was no evident tactical rationale either for failing to object when the Commonwealth again referred to the victim's conversation with Yater in closing argument, or for failing to request an instruction on fresh complaint. Contrast *Commonwealth* v. *McCarthy*, 12 Mass. App. Ct. 722, 728-729 (1981) (defense counsel's failure to request fresh complaint instruction reasonable where his trial strategy relied on using circumstances attending fresh complaint in connection with more than just question of corroboration). In all of these respects, we conclude that defense counsel's performance was deficient.

We turn now to the somewhat more difficult issue of the nature and extent of the prejudice resulting from defense counsel's missteps. Had the defendant requested the judge to do so, it is at least possible that he would have barred any mention of Yater's potential testimony until he had decided whether to exclude it. Further, had the defendant objected to the victim's testimony regarding her conversation with Yater, it likely would have been excluded — it certainly could not have been admitted as fresh complaint since it related to events that occurred three years *before* the incident for which the defendant was indicted and, in any event, probably could not be considered "fresh," occurring as it did approximately two years after the

---

[3]While a somewhat unfamiliar situation at first glance, it is simply another manifestation of the traditional rule barring corroboration of "the testimony of a witness by proof that he has said the same thing before, when not under oath." *Commonwealth* v. *Cleary*, 172 Mass. 175, 176 (1898) (reviewing the foundations of the fresh complaint doctrine).

We note also that the Commonwealth does not dispute this characterization of the victim's testimony as fresh complaint.

assault.[4] Likewise, in view of the fact that the judge had excluded Yater's testimony, it is likely that with quicker action, the defendant could have prevented the prosecutor from mentioning the victim's complaint to Yater in his closing argument altogether or, at a minimum, obtained a curative instruction.[5] Finally, once the victim had recited her out-of-court statements to Yater, there is no question that the defendant could have obtained a fresh complaint instruction. See *Commonwealth* v. *Bailey*, 370 Mass. 388, 396 (1976); *Commonwealth* v. *Almon*, 30 Mass. App. Ct. 721, 724 (1991) (where fresh complaint evidence is admitted, instruction must be provided if requested). In sum, more alert efforts on the part of defense counsel would have obtained palpable benefits. Indeed, it is possible, if not likely, that with proper foresight defense counsel could have prevented the jury from hearing about Yater's corroboration evidence altogether.

In the absence of any real physical[6] or eyewitness evidence, the case devolved to a credibility contest between the defendant and the victim. In these circumstances, the repeated references to the corroborating report to Yater were likely to make a significant impression on the jury. Further, in the absence of any instructions on the proper use of the victim's testimony regarding her report to Yater, the jury may have assumed that it was free to use the evidence of the report as substantive evidence that the 1987 assault had occurred. See *Commonwealth* v. *Almon*, 30 Mass. App. Ct. at 724 (judgment reversed where instruction on proper use of fresh complaint evidence omitted). The fact that the judge had deemed Yater's own account of the victim's report inadmissible (and so, as noted, it conceivably could have been kept from the jury altogether) only adds to the

---

[4]During voir dire (as noted, her testimony was excluded at trial), Yater indicated that her conversation with the victim regarding the 1987 incident occurred in 1989.

[5]The prosecutor stated: "[The victim] told you that sometime back here when she was with her friend, Mandy Yater, in fifth grade, that she told Mandy what her father was doing to her." Although the defendant does not make the argument himself, the remark is also problematic in that it imports a major element from Yater's excluded voir dire testimony: while the victim could not remember when she told Yater about the 1987 assault, Yater stated (outside of the hearing of the jury) that it had occurred while the two were in the fifth grade. A small point, but significant in terms of bolstering the sense that the conversation was real, rather than the victim's invention.

[6]There was some equivocal medical evidence suggesting that the victim's vagina had been penetrated by some object at some time.

extent of the prejudice resulting from defense counsel's actions. In short, we are at a loss to divine a rationale for defense counsel's handling of these aspects of the case, and further conclude that his conduct likely had a material effect on the jury's verdict.

In many respects, this case resembles *Commonwealth* v. *Gillette*, 33 Mass. App. Ct. 427, 430-432 (1992). There, amid remarkably similar factual circumstances, defense counsel inexplicably failed to make efforts to exclude highly damaging evidence. In reversing the defendant's conviction in *Gillette*, we stated that "not only would better work have succeeded in keeping the highly prejudicial statement out of the case, but better work would have accomplished something material for the defendant. No reasonable trial strategy to justify the omission has been suggested by the Commonwealth, nor can we imagine any." *Id.* at 431-432. The same may be said of the present situation.

One additional point: While defense counsel was remiss in failing to take more vigorous steps to exclude the evidence of the victim's report, the trial judge also contributed to the need for a retrial. In appropriate situations, a judge certainly is entitled to defer ruling on the admissibility of particular evidence until during trial. In many cases, the question of admissibility will turn on the nature of other evidence adduced by the parties, or some other factor that emerges at trial. However, when a judge decides to wait, it is essential that he or she take steps to ensure that the jury is not exposed to the questionable evidence before the issue of admissibility is finally decided.

Failing to follow this course places the opponent of the evidence in a difficult situation, and may create an unfair advantage for the proponent of the testimony, especially in the event the evidence ultimately is excluded. Here, for example, defense counsel, as noted, was forced by the judge's wait-and-see approach to address the potential fresh complaint testimony in his opening statement — despite the fact that no fresh complaint testimony ever materialized. Further, the prosecutor, both through his opening and closing presentations, as well as through the direct testimony of the victim, was able to present the jury with a relatively full account of the putative fresh complaint — without either (1) meeting the foundational requirements for the introduction of hearsay as fresh complaint, (2) exposing the actual fresh complaint witness to cross-

examination, or (3) having the evidence made subject to a limiting instruction.

A somewhat similar situation arose in *Commonwealth* v. *Goss,* 41 Mass. App. Ct. 929, 929-930 (1996). There the Commonwealth presented the jury with testimony that, while not formally characterized as such, "was in essence fresh complaint." As in the present case, whether the evidence met the fresh complaint foundational requirements was not tested at trial, and no limiting instructions were provided by the trial judge. See *Commonwealth* v. *Licata,* 412 Mass. 654, 660 (1992) (trial judge must instruct on proper use of fresh complaint evidence "as the evidence is admitted and again during the jury instructions"). Since *Goss* devolved to a close "credibility battle," with no physical evidence on either side, we concluded that the admission of the testimony amounted to a substantial risk of a miscarriage of justice.

The same basic factors that led to reversal in *Goss* also are present here (i.e., pure credibility battle, no instructions). Had we not already determined that defense counsel's missteps amounted to reversible error, the judge's actions here might well have provided an alternative basis for reversal. In the end, however, in view of the shortcomings of defense counsel already chronicled, we need not pass on that question.

Finally, although we need not reach the defendant's first claim of error, to the extent that it probably will arise at any retrial, we briefly comment on the defendant's claim that the trial judge erred in admitting evidence of the 1987 incident. While evidence of prior bad acts may not be admitted merely for the purpose of establishing a defendant's general propensity for engaging in criminal misconduct, such evidence may be admitted for other purposes, including for the purpose of proving a defendant's passion or emotion toward the victim of a sexual assault, or for showing a pattern of conduct. See *Commonwealth* v. *King,* 387 Mass. 464, 470 (1982); *Commonwealth* v. *Mamay,* 407 Mass. 412, 417-418 (1990). Here, the evidence of the 1987 assault was probative on both of these grounds.

While it is true that as much as two and one-half years had elapsed between the two assaults (the victim was somewhat vague both on the precise timing of the incidents and whether there had been other assaults in between), this gap is not so great as to render the evidence inadmissible, particularly in view of "the distinctiveness and near-identicality of the

conduct" in the two episodes. *Commonwealth* v. *Helfant*, 398 Mass. 214, 228 (1986) (approving admission of evidence of prior similar rapes after gap of three years). As we have said on numerous occasions, "[t]here is no bright-line test for determining temporal remoteness of evidence of prior misconduct." *Commonwealth* v. *Calcagno*, 31 Mass. App. Ct. 25, 27 (1991) (approving admission of prior sexual assaults that occurred between one and seven years before act forming basis of indictment). We conclude that the interval here was not sufficient to dissipate the probative value of the evidence of the 1987 incident. There was, therefore, no error in its admission.

Consistent with the foregoing, the judgment is reversed, and the verdict set aside. The case is remanded to the Superior Court for such further proceedings as the Commonwealth may elect to pursue.

*So ordered.*