USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1864

 CHARLES VIEUX,

 Petitioner, Appellant,

 v.

 PETER A. PEPE, JR., ET AL.,

 Respondents, Appellees.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Douglas P. Woodlock, U.S. District Judge]

 Before

 Lynch, Circuit Judge,
 Coffin and Cyr, Senior Circuit Judges.
 
 
 
 
 Peter M. Onek, by Appointment of the Court, for appellant.
 Cathryn A. Neaves, Assistant Attorney General, with whom
Thomas F. Reilly, Attorney General, was on brief for appellees.

July 19, 1999

 
 

 COFFIN, Senior Circuit Judge. Charles Vieux was charged
in a Massachusetts state proceeding with rape and indecent assault
and battery stemming from an encounter with Marie Dorcely. After
the incident Marquise Dorcely, Marie's younger sister, eavesdropped
on a telephone conversation Vieux had with Marie's mother. Over
Vieux's objection on hearsay grounds, the court admitted Marquise's
testimony regarding a comment Vieux had made. On appeal Vieux
claimed ineffective assistance of counsel for failure to object on
other grounds. After the Massachusetts Appeals Court disagreed and
affirmed his conviction, he filed a petition for writ of habeas
corpus in federal court. The district court also rebuffed his
entreaty, and he has now appealed to us. We agree that his
argument lacks merit, and address once again the difficult issue of
ascertaining the precise contours of federal court appraisal of
habeas petitions filed by state prisoners.
 I. FACTUAL BACKGROUND
 Vieux was a close friend of the Dorcely family. On June
19, 1994, after spending the day at a beach with some friends,
Vieux took them to the Dorcelys' house for something to drink. 
While his friends waited in the car, Vieux went inside and called
out to see if anyone was present. Alone in the house, Marie
allowed him upstairs, and, after he inspected some recent carpentry
work, they both went to the kitchen to get him some ice water.
 At this point their accounts of the events differ. She
claims that he pinned her against the refrigerator, fondled her
breasts and inserted his finger into her vagina. She says that he
then dragged her a couple feet to the living room where he pushed
her forward over the back of a couch, lifted up her dress and had
intercourse with her from behind. She asserts that throughout the
episode she attempted to get him to stop and he told her not to
make him exert himself too much. His version of events has her
being the sexual aggressor, kissing him and leading him to the
couch where they had brief consensual intercourse.
 Afterwards, he brought drinks out to his friends in the
car. When they all eventually left, Marie called Dina Casimir and
told Casimir she had been raped. Casimir immediately called an
ambulance, and Marie was taken to the hospital. The hospital staff
discovered semen but noted that Marie appeared to have no bruising
or lacerations.
 That night, Marie's mother, Degrace Dorcely, called Vieux
to discuss the incident. He admitted that he and Marie had engaged
in intercourse, but claimed it was consensual. They spoke a couple
of times over the next few days, repeating the basic elements of
that conversation. On one call Vieux turned on the speaker phone
so other mechanics at the shop where Vieux worked could listen to
the conversation. Vieux testified that the other mechanics
listened and laughed.
 Also during one of the calls, unbeknownst to either
Degrace or Vieux, Marquise eavesdropped from a telephone extension
because she "wanted to know what was going on." After the end of
the conversation, Degrace hung up, but Marquise stayed on the line
and heard Vieux telling the other mechanics that Degrace should
allow him to marry Marie, and explaining that he just "got a little
pussy." Vieux denies ever making such a vulgar comment. 
 II. PROCEDURAL HISTORY
 Vieux was charged with rape and indecent assault and
battery. The central issue at trial involved whether Marie had
consented to the intercourse. Both Marie and Vieux took the stand,
and because they were the only witnesses to the encounter and had
conflicting accounts, the jury was forced to weigh their
credibility. Believing that the comment Marquise allegedly
overheard would tarnish Vieux's image in the minds of the jury,
Vieux's lawyer unsuccessfully attempted to suppress this evidence
by objecting on hearsay grounds.
 After deliberating for approximately six hours, the jury
reported that it was deadlocked. The court then issued a
supplemental charge, and the jury deliberated for another several
hours before finding Vieux guilty of rape and not guilty of
indecent assault and battery.
 On appeal, Vieux claimed that he received ineffective
assistance of counsel. Vieux argued that the federal wiretapping
statute (outlawing "any electronic . . . device" used to intercept
a telephone conversation and the evidence therefrom) prohibits the
introduction of the statement Marquise claims to have overheard
while eavesdropping. Vieux asserted that his lawyer should have
objected on that basis, and the failure to do so constituted
ineffective assistance of counsel. The Massachusetts Appeals Court
found that an objection based on the federal wiretapping statute
would have been futile because the evidence fell into the statute's
"ordinary course of business" exception (exempting from the
definition of an "electronic . . . device" a telephone "being used
. . . in the ordinary course of . . . business"). Consequently,
the court concluded that counsel was not ineffective, and affirmed
Vieux's conviction. He unsuccessfully sought review before the
Massachusetts Supreme Judicial Court and the United States Supreme
Court, but each denied his request.
 Vieux then filed a petition for writ of habeas corpus in
federal district court. In a lengthy and thoughtful opinion, the 
court agreed with the Massachusetts Appeals Court and dismissed his
petition.
 III. REVIEW UNDER AEDPA
 Before addressing the merits of Vieux's claim, we must
first delve into an explication of our standard of review. When
Congress passed the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA"), it significantly altered our review of habeas
petitions brought by state prisoners. Federal courts are now
barred from granting a writ of habeas corpus to such individuals
unless the underlying adjudication:
 (1) resulted in a decision that was contrary
 to, or involved an unreasonable application
 of, clearly established Federal law, as
 determined by the Supreme Court of the United
 States; or
 (2) resulted in a decision that was based on
 an unreasonable determination of the facts in
 light of the evidence presented in the State
 court proceeding.

28 U.S.C. 2254(d). The Massachusetts Appeals Court did not
determine any facts, so we need analyze its decision only under
subsection (1), i.e., we must decide whether it was "contrary to,
or involved an unreasonable application of, clearly established
Federal law."
 When we addressed this provision at length in O'Brien v.
DuBois, 145 F.3d 16 (1st Cir. 1998), we held that the provision
requires a two step inquiry. "First, the habeas court asks whether
the Supreme Court has prescribed a rule that governs the
petitioner's claim. If so, the habeas court gauges whether the
state court decision is 'contrary to' the governing rule." Id. at
24. If petitioner does not obtain relief under the "contrary to"
prong, the inquiry shifts to the second step where the habeas court
must decide whether the state decision is an unreasonable
application of Supreme Court precedent. See id. In O'Brien, we
found no Court precedent sufficiently on point to justify review
under the "contrary to" prong, so we proceeded to evaluate the
claim under the "unreasonable application" clause. See id. at 26.
 Massachusetts argues that if a claim can be analyzed
under the first prong, the court is not allowed to reach the second
step in the analysis. As we shall demonstrate, this is simply
incorrect.
 The initial challenge in applying this statutory language
is in determining precisely how similar the case must be to Supreme
Court precedent to justify "contrary to" analysis. Quite
obviously, the closer a case is to the factual and legal posture of
a given Supreme Court decision, the easier it is to say that the
Supreme Court has prescribed a governing rule, thereby triggering
the "contrary to" clause. However, precise identicality of facts
and legal issues is not required, for, if it were, no cases would
be analyzed under the "contrary to" prong. Therefore, we commented
that some "Supreme Court holdings are 'general' in the sense that
they erect a framework specifically intended for application to
variant factual situations." Id. at 25. In a footnote by way of
example we cited a number of familiar cases that would fit this
mold, including Strickland v. Washington, 466 U.S. 668 (1984), for
claims involving ineffective assistance of counsel. When a
petitioner raised such a "framework" legal claim, we held that
Court precedent "sufficiently shape[d] the contours of . . .
appropriate analysis . . . to merit review of a state court's
decision under section 2254(d)(1)'s 'contrary to' prong." O'Brien,
145 F.3d at 25.
 The fact that "framework" claims may be analyzed under
the "contrary to" clause does not, however, obviate the need also
to apply the "unreasonable application" clause as well. Rather,
O'Brien held that relief under the "contrary to" prong requires
both: (1) identification of controlling Court precedent, whether a
"framework" case like Strickland or not; and (2) a ruling that the
identified precedent demands a particular outcome, i.e., one
contrary to that reached by the state court. Specifically, we
stated that the "key inquiry" was whether the relevant Supreme
Court decision "can fairly be said to require a particular result
in a particular case." Id. (emphasis added). "If no Supreme Court
precedent is dispositive of a petitioner's claim, then, a fortiori,
there is no specific rule to which the state court's decision can
be 'contrary.'" Id. (emphasis added).
 Thus, the petitioner may succeed under the "contrary to"
clause only if Supreme Court caselaw directly governs the claim and
the state court got it wrong. The case is not over, however, if
the state court decision cannot be termed "contrary to" Court
precedent. Instead, just as in cases where there is no specific
rule on point, we must assess whether it is an "unreasonable
application" of the Court's pronouncements. Admittedly, in certain
cases, especially those involving non-"framework" claims, Court
precedent will be sufficiently specific that petitioner's claim
will either be contrary to or entirely consonant with the Court's
rulings. If the state decision is consistent with the relevant
Court decision, it plainly would not be an unreasonable application
of Court precedent. Therefore, the federal court will be able to
dispatch swiftly any argument under the second step of analysis.
 To say this, however, is not to say that the second step
analysis is unnecessary, for unless a habeas court grants relief
under the "contrary to" prong, it will be required to analyze the
petitioner's claim under the "unreasonable application" prong as
well. To rule otherwise would be to ignore the word "or" in the
statute limiting our power to grant the writ if the state decision
was "contrary to, or involved an unreasonable application of,"
federal law. 28 U.S.C. 2254(d)(1) (emphasis added).
 IV. PETITIONER'S CLAIMS
 We turn to the merits of Vieux's appeal. Vieux's claim
of ineffective assistance of counsel is analyzed under the familiar
Strickland rubric, which requires Vieux to prove that his counsel's
performance both was deficient and prejudiced his defense. See
United States v. Ortiz, 146 F.3d 25, 27 (1st Cir. 1998). 
Obviously, counsel's performance was not deficient if he declined
to pursue a futile tactic. See United States v. Wright, 573 F.2d
681, 684 (1st Cir. 1978) ("Counsel is not required to waste the
court's time with futile or frivolous motions."). The
Massachusetts Appeals Court ruled that Vieux's counsel was not
deficient because any objection on the basis of the federal
wiretapping statute would have been overruled by the trial court. 
Consequently, the court denied his claim under Strickland.
 We start by noting that the Massachusetts Appeals Court
conducted a proper Strickland analysis. It identified both
essential elements of an ineffective assistance of counsel claim,
and properly recognized that "failing to pursue a futile tactic
does not amount to constitutional ineffectiveness." Commonwealth
v. Vieux, 671 N.E.2d 989, 990 (Mass. App. Ct. 1996). So long as
its underlying reasoning, i.e., that the objection would have been
unsuccessful, was not "contrary to, or [did not] involve[] an
unreasonable application of" Supreme Court precedent, we are
powerless to grant the writ. We turn, then, to whether an
objection would have been futile.
 In relevant part, the federal wiretapping statute outlaws
the unauthorized use of "any electronic, mechanical, or other
device" to intercept a telephone conversation. 18 U.S.C. 
2511(b). The statute also prohibits courts from receiving any such
illegally intercepted telephone conversations into evidence at
trial. See 18 U.S.C. 2515. At issue is whether Marquise's
telephone extension constitutes an "electronic, mechanical or other
device." The statute defines that term as "any device . . . other
than . . . any telephone . . . being used by the subscriber or user
in the ordinary course of its business[.]" 18 U.S.C. 2510(5). 
Consequently, if Marquise was using the phone in the ordinary
course of her business, she did not illegally intercept Vieux's
alleged comment. On the other hand, if she was not using the phone
in the ordinary course of her business, then her eavesdropping
constituted the use of "any electronic, mechanical or other
device," and the trial court would have been barred from allowing
the statement she overheard into evidence. Under this scenario,
any objection on this basis should have been successful.
 The Massachusetts Appeals Court conducted an extensive
survey of the caselaw interpreting the contours of the "ordinary
course of business" exception. See Commonwealth v. Vieux, 671
N.E.2d at 991-993. Because the first step of our review centers on
whether the state decision was contrary to only those cases decided
by the Supreme Court, we focus our inquiry there.
 The Supreme Court has not directly addressed the scope of
the "ordinary course of business" exception. It has considered the
statute on a number of occasions, but most decisions involve the
authority of law enforcement personnel to wiretap criminal
suspects. See, e.g., United States v. Ojeda Rios, 495 U.S. 257
(1990) (discussing the requirement that law enforcement seal tapes
of authorized interceptions); Dalia v. United States, 441 U.S. 238
(1979) (holding that electronic surveillance statute granted courts
the power to allow government agents to enter private premises
covertly). In his attempt to argue that the state decision was
contrary to Supreme Court caselaw, Vieux cites two cases: Gelbard
v. United States, 408 U.S. 41 (1972), and United States v.
Giordano, 416 U.S. 505 (1974). 
 At issue in Gelbard was a witness's attempt to invoke the
statute to refuse to testify before a grand jury because any
testimony would be based on illegally intercepted conversations. 
In the course of allowing this claim as a defense to the witness's
contempt proceeding, the Court stated that unless "expressly
authorized in [the statute] . . . all interceptions of wire and
oral communications are flatly prohibited." Gelbard, 408 U.S. at
46. Vieux relies heavily on this simple statement in his attempt
to convince us that Marquise's eavesdropping was improper. He
neglects to acknowledge, however, that the use of a telephone in
the "ordinary course of business" does not fall within the
definition of a prohibited intercepting device, and anything
overheard therefore would not be an interception. The quotation
provides no assistance in resolving the issue before us and instead
begs the question. No other language in Gelbard indicates in any
way whether Marquise's eavesdropping should fall within the
"ordinary course of business" exception or not.
 Giordano provides equally little ammunition for Vieux's
challenge. Giordano involved a motion to suppress evidence because
the authority for a given wiretap did not come from one of the
officials empowered to authorize electronic surveillance under the
statute. Again Vieux highlights the Court's sweeping language,
namely that "[t]he purpose of the legislation . . . was effectively
to prohibit . . . all interceptions of oral and wire
communications, except those specifically provided for in the Act,"
most notably law enforcement personnel acting under a court order. 
Giordano, 416 U.S. at 514. And again, the quote fails to address
the underlying question of whether Marquise's eavesdropping was not
an interception because she used an extension telephone in the
ordinary course of her business. 
 Hence the Supreme Court has not ruled directly on the
scope of the ordinary business exception, and its more general
pronouncements provide no guidance as to whether Marquise's
eavesdropping was done in the "ordinary course of business."
Consequently, we cannot say that the Massachusetts Appeals Court's
decision that counsel was not deficient because the objection would
be futile was "contrary to" Supreme Court caselaw.
 We thus proceed to the second step of the inquiry:
whether the state court ruling was an "unreasonable application" of
the Court's precedent. As we said in O'Brien, the issue "reduces
to a question of whether the state court's derivation of a case-
specific rule from the Court's generally relevant jurisprudence
appears objectively reasonable." O'Brien, 145 F.3d at 25. To find
the state decision unreasonable, it must be "so offensive to
existing precedent, so devoid of record support, or so arbitrary,
as to indicate that it is outside the universe of plausible,
credible outcomes." Id. 
 In divining the reasonableness of the Appeals Court's
decision, we start by noting that the scope of the "ordinary course
of business" exception has been the subject of a significant split
in authority. Relying on legislative history concerning the
extensive use of electronic surveillance in marital disputes, some
courts have ruled that the intra-family use of an extension phone
does not fall within the ordinary course of business exception, and
hence any conversation heard by some family members when
eavesdropping on other family members is inadmissible in court. 
See, e.g., Kempf v. Kempf, 868 F.2d 970, 973 (8th Cir. 1989)
(holding that no exception exists under federal wiretapping statute
for instances of willful, unconsented-to electronic surveillance
between spouses); Pritchard v. Pritchard, 732 F.2d 372, 374 (4th
Cir. 1984) (same); United States v. Jones, 542 F.2d 661, 673 (6th
Cir. 1976) (finding that the plain language of the statute and its
legislative history compel the interpretation that the act includes
interspousal wiretaps).
 Other courts, concerned about intruding on intra-family
matters better left to state law, have ruled that eavesdropping by
family members on an extension telephone falls within the ordinary
course of the family member's business and thus is not outlawed by
the federal electronic surveillance statute. See, e.g., Scheib v.
Grant, 22 F.3d 149, 153-4 (7th Cir. 1994) (finding that father's
monitoring and recording conversations between his child and his
ex-wife was encompassed within the ordinary course of business
exception); Newcomb v. Ingle, 944 F.2d 1534, 1535-36 (10th Cir.
1991) (ruling that custodial parent's recording of child's
conversations with non-custodial parent was not an illegal
interception under the statute); Anonymous v. Anonymous, 558 F.2d
677, 679 (2d Cir. 1977) (quoting testimony from the legislative
history to the effect that "nobody wants to make it a crime for a
father to listen in on his teenage daughter or some such related
problem"); Simpson v. Simpson, 490 F.2d 803, 810 (5th Cir. 1974)
(deciding that husband intercepting conversations between wife and
another man did not fall within statute's prohibitions).
 It seems to us that both positions are supportable. The
Massachusetts Appeals Court's conclusion that an objection under
the federal wiretapping statute would have been overruled was
therefore not an "unreasonable application" of federal law.
 Let us be clear. We are not deciding that, were the
question presented to us, Marquise's use of the telephone extension
was done in the ordinary course of business and thus was exempted
from the federal wiretapping statute's restrictions. Rather, we
are holding only that the Massachusetts Appeals Court's decision to
that effect was not "contrary to" or "an unreasonable application
of" federal law. Consequently, its decision that Vieux's lawyer
was not constitutionally ineffective for failing to object on that
basis was equally not contrary to or an unreasonable application of
federal law.
 In essence, Vieux wants us to announce our views as to
the scope of the ordinary business exception, and then apply the
result, if favorable to him, to his trial in state court three
years ago. We refuse to do so. As we said in O'Brien, 
 Teague taught that, apart from the Supreme
 Court, federal habeas courts ought not act as
 innovators in the field of criminal procedure,
 thereby upsetting state convictions because
 state courts were not prescient and thus
 failed to comply with federal law that did not
 exist at the time they ruled. 

O'Brien, 145 F.3d at 23. This case falls precisely within that
restriction. When confronted with Vieux's ineffective assistance
of counsel claim, the Massachusetts Appeals Court issued a decision
that cannot be deemed unreasonable in light of a healthy debate
among a number of courts. We are powerless to grant Vieux's
subsequent petition for the writ of habeas corpus.
 Affirmed.