**Charles VIEUX, Petitioner, Appellant,**

v.

**Peter A. PEPE, Jr., et al., Respondents, Appellees.**

**No. 98–1864.**

United States Court of Appeals, First Circuit.

Argued May 4, 1999.

Decided July 19, 1999.

Peter M. Onek, by Appointment of the Court, for appellant.

Cathryn A. Neaves, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief for appellees.

Before LYNCH, Circuit Judge,
COFFIN and CYR, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Charles Vieux was charged in a Massachusetts state proceeding with rape and indecent assault and battery stemming from an encounter with Marie Dorcely. After the incident Marquise Dorcely, Marie's younger sister, eavesdropped on a telephone conversation Vieux had with Marie's mother. Over Vieux's objection on hearsay grounds, the court admitted Marquise's testimony regarding a comment Vieux had made. On appeal Vieux claimed ineffective assistance of counsel for failure to object on other grounds. After the Massachusetts Appeals Court disagreed and affirmed his conviction, he filed a petition for writ of habeas corpus in federal court. The district court also rebuffed his entreaty, and he has now appealed to us. We agree that his argument lacks merit, and address once again the difficult issue of ascertaining the precise contours of federal court appraisal of habeas petitions filed by state prisoners.

## I. FACTUAL BACKGROUND

Vieux was a close friend of the Dorcely family. On June 19, 1994, after spending the day at a beach with some friends, Vieux took them to the Dorcelys' house for something to drink. While his friends waited in the car, Vieux went inside and called out to see if anyone was present. Alone in the house, Marie allowed him upstairs, and, after he inspected some recent carpentry work, they both went to the kitchen to get him some ice water.

At this point their accounts of the events differ. She claims that he pinned her against the refrigerator, fondled her breasts and inserted his finger into her vagina. She says that he then dragged her a couple feet to the living room where he pushed her forward over the back of a couch, lifted up her dress and had intercourse with her from behind. She asserts that throughout the episode she attempted to get him to stop and he told her not to make him exert himself too much. His version of events has her being the sexual aggressor, kissing him and leading him to the couch where they had brief consensual intercourse.

Afterwards, he brought drinks out to his friends in the car. When they all eventually left, Marie called Dina Casimir and told Casimir she had been raped. Casimir immediately called an ambulance, and Marie was taken to the hospital. The hospital staff discovered semen but noted that Marie appeared to have no bruising or lacerations.

That night, Marie's mother, Degrace Dorcely, called Vieux to discuss the incident. He admitted that he and Marie had engaged in intercourse, but claimed it was consensual. They spoke a couple of times over the next few days, repeating the basic elements of that conversation. On one call Vieux turned on the speaker phone so other mechanics at the shop where Vieux worked could listen to the conversation. Vieux testified that the other mechanics listened and laughed.

Also during one of the calls, unbeknownst to either Degrace or Vieux, Marquise eavesdropped from a telephone extension because she "wanted to know what was going on." After the end of the conversation, Degrace hung up, but Marquise stayed on the line and heard Vieux telling the other mechanics that Degrace should allow him to marry Marie, and explaining that he just "got a little pussy." Vieux denies ever making such a vulgar comment.

## II. *PROCEDURAL HISTORY*

Vieux was charged with rape and indecent assault and battery. The central issue at trial involved whether Marie had consented to the intercourse. Both Marie and Vieux took the stand, and because they were the only witnesses to the encounter and had conflicting accounts, the jury was forced to weigh their credibility. Believing that the comment Marquise allegedly overheard would tarnish Vieux's image in the minds of the jury, Vieux's lawyer unsuccessfully attempted to suppress this evidence by objecting on hearsay grounds.

After deliberating for approximately six hours, the jury reported that it was deadlocked. The court then issued a supplemental charge, and the jury deliberated for another several hours before finding Vieux guilty of rape and not guilty of indecent assault and battery.

On appeal, Vieux claimed that he received ineffective assistance of counsel. Vieux argued that the federal wiretapping statute (outlawing "any electronic . . . device" used to intercept a telephone conversation and the evidence therefrom) prohibits the introduction of the statement Marquise claims to have overheard while eavesdropping. Vieux asserted that his lawyer should have objected on that basis, and the failure to do so constituted inef-

fective assistance of counsel. The Massachusetts Appeals Court found that an objection based on the federal wiretapping statute would have been futile because the evidence fell into the statute's "ordinary course of business" exception (exempting from the definition of an "electronic . . . device" a telephone "being used . . . in the ordinary course of . . . business"). Consequently, the court concluded that counsel was not ineffective, and affirmed Vieux's conviction. He unsuccessfully sought review before the Massachusetts Supreme Judicial Court and the United States Supreme Court, but each denied his request.

Vieux then filed a petition for writ of habeas corpus in federal district court. In a lengthy and thoughtful opinion, the court agreed with the Massachusetts Appeals Court and dismissed his petition.

## III. *REVIEW UNDER AEDPA*

 Before addressing the merits of Vieux's claim, we must first delve into an explication of our standard of review. When Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), it significantly altered our review of habeas petitions brought by state prisoners. Federal courts are now barred from granting a writ of habeas corpus to such individuals unless the underlying adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Massachusetts Appeals Court did not determine any facts,[1] so we need analyze its decision only

---

1. Vieux claims that the Massachusetts Appeals Court engaged in improper factfinding when it described Marquise's motivation as "concern for her sister." *Commonwealth v.*

*Vieux,* 41 Mass.App.Ct. 526, 671 N.E.2d 989, 993 (1996). At trial Marquise had stated that she was listening in because she "wanted to know what was going on." We do not read

under subsection (1), i.e., we must decide whether it was "contrary to, or involved an unreasonable application of, clearly established Federal law."

■ When we addressed this provision at length in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998), we held that the provision requires a two step inquiry. "First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is 'contrary to' the governing rule." *Id.* at 24. If petitioner does not obtain relief under the "contrary to" prong, the inquiry shifts to the second step where the habeas court must decide whether the state decision is an unreasonable application of Supreme Court precedent. *See id.* In *O'Brien*, we found no Court precedent sufficiently on point to justify review under the "contrary to" prong, so we proceeded to evaluate the claim under the "unreasonable application" clause. *See id.* at 26.

Massachusetts argues that if a claim can be analyzed under the first prong, the court is not allowed to reach the second step in the analysis. As we shall demonstrate, this is simply incorrect.

■ The initial challenge in applying this statutory language is in determining precisely how similar the case must be to Supreme Court precedent to justify "contrary to" analysis. Quite obviously, the closer a case is to the factual and legal posture of a given Supreme Court decision, the easier it is to say that the Supreme Court has prescribed a governing rule, thereby triggering the "contrary to" clause. However, precise identicality of facts and legal issues is not required, for, if it were, no cases would be analyzed under the "contrary to" prong. Therefore, we commented that some "Supreme Court holdings are 'general' in the sense that they erect a framework specifically intend-

ed for application to variant factual situations." *Id.* at 25. In a footnote by way of example we cited a number of familiar cases that would fit this mold, including *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for claims involving ineffective assistance of counsel. When a petitioner raised such a "framework" legal claim, we held that Court precedent "sufficiently shape[d] the contours of . . . appropriate analysis . . . to merit review of a state court's decision under section 2254(d)(1)'s 'contrary to' prong." *O'Brien*, 145 F.3d at 25.

■ The fact that "framework" claims may be analyzed under the "contrary to" clause does not, however, obviate the need also to apply the "unreasonable application" clause as well. Rather, *O'Brien* held that relief under the "contrary to" prong requires both: (1) identification of controlling Court precedent, whether a "framework" case like *Strickland* or not; and (2) a ruling that the identified precedent demands a particular outcome, i.e., one contrary to that reached by the state court. Specifically, we stated that the "key inquiry" was whether the relevant Supreme Court decision "can fairly be said to *require* a particular result in a particular case." *Id.* (emphasis added). "If no Supreme Court precedent is *dispositive* of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.' " *Id.* (emphasis added).

■ Thus, the petitioner may succeed under the "contrary to" clause only if Supreme Court caselaw directly governs the claim and the state court got it wrong. The case is not over, however, if the state court decision cannot be termed "contrary to" Court precedent. Instead, just as in cases where there is no specific rule on point, we must assess whether it is an

the court's language as being a determination of the facts, but rather a fair characterization of the trial testimony. Nevertheless, to the degree that interpreting Marquise's comment

as "concern for her sister" does constitute a factual determination, we find that the Appeals Court's decision was not unreasonable under § 2254(d)(2).

"unreasonable application" of the Court's pronouncements. Admittedly, in certain cases, especially those involving non-"framework" claims, Court precedent will be sufficiently specific that petitioner's claim will either be contrary to or entirely consonant with the Court's rulings. If the state decision is consistent with the relevant Court decision, it plainly would not be an unreasonable application of Court precedent. Therefore, the federal court will be able to dispatch swiftly any argument under the second step of analysis.

■ To say this, however, is not to say that the second step analysis is unnecessary, for unless a habeas court grants relief under the "contrary to" prong, it will be required to analyze the petitioner's claim under the "unreasonable application" prong as well. To rule otherwise would be to ignore the word "or" in the statute limiting our power to grant the writ if the state decision was "contrary to, *or* involved an unreasonable application of," federal law. 28 U.S.C. § 2254(d)(1) (emphasis added).

## IV. *PETITIONER'S CLAIMS*

■ We turn to the merits of Vieux's appeal. Vieux's claim of ineffective assistance of counsel is analyzed under the familiar *Strickland* rubric, which requires Vieux to prove that his counsel's performance both was deficient and prejudiced his defense. *See United States v. Ortiz*, 146 F.3d 25, 27 (1st Cir.1998). Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic. *See United States v. Wright*, 573 F.2d 681, 684 (1st Cir.1978) ("Counsel is not required to waste the court's time with futile or frivolous motions."). The Massachusetts Appeals Court ruled that Vieux's counsel was

not deficient because any objection on the basis of the federal wiretapping statute would have been overruled by the trial court. Consequently, the court denied his claim under *Strickland.*

■ We start by noting that the Massachusetts Appeals Court conducted a proper *Strickland* analysis.[2] It identified both essential elements of an ineffective assistance of counsel claim, and properly recognized that "failing to pursue a futile tactic does not amount to constitutional ineffectiveness." *Commonwealth v. Vieux*, 41 Mass.App.Ct. 526, 671 N.E.2d 989, 990 (1996). So long as its underlying reasoning, i.e., that the objection would have been unsuccessful, was not "contrary to, or [did not] involve[ ] an unreasonable application of" Supreme Court precedent, we are powerless to grant the writ. We turn, then, to whether an objection would have been futile.

In relevant part, the federal wiretapping statute outlaws the unauthorized use of "any electronic, mechanical, or other device" to intercept a telephone conversation. 18 U.S.C. § 2511(b). The statute also prohibits courts from receiving any such illegally intercepted telephone conversations into evidence at trial. *See* 18 U.S.C. § 2515. At issue is whether Marquise's telephone extension constitutes an "electronic, mechanical or other device." The statute defines that term as "any device ... other than ... any telephone ... being used by the subscriber or user in the ordinary course of its business[.]" 18 U.S.C. § 2510(5). Consequently, if Marquise was using the phone in the ordinary course of her business, she did not illegally intercept Vieux's alleged comment. On the other hand, if she was not using the

**2.** Although, as we noted in *O'Brien*, 145 F.3d at 25 and n. 6, *Strickland v. Washington* sets up a "framework" for analysis of ineffective assistance of counsel claims under section 2254(d)(1)'s "contrary to" prong, we also noted that it would be a rare case that could be said to forge a contrary rule. Moreover, whether counsel's assistance was ineffective

depends on whether failure to object was deficient. This, in turn, depends on whether precedent from the Supreme Court or its surrogate, relevant lower court jurisprudence, has clearly barred an "ordinary course of business" exception to the wiretapping statute in similar circumstances.

phone in the ordinary course of her business, then her eavesdropping constituted the use of "any electronic, mechanical or other device," and the trial court would have been barred from allowing the statement she overheard into evidence. Under this scenario, any objection on this basis should have been successful.

The Massachusetts Appeals Court conducted an extensive survey of the caselaw interpreting the contours of the "ordinary course of business" exception. *See Commonwealth v. Vieux,* 671 N.E.2d at 991–993. Because the first step of our review centers on whether the state decision was contrary to only those cases decided by the Supreme Court, we focus our inquiry there.

The Supreme Court has not directly addressed the scope of the "ordinary course of business" exception. It has considered the statute on a number of occasions, but most decisions involve the authority of law enforcement personnel to wiretap criminal suspects. *See, e.g., United States v. Ojeda Rios,* 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990) (discussing the requirement that law enforcement seal tapes of authorized interceptions);. *Dalia v. United States,* 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979) (holding that electronic surveillance statute granted courts the power to allow government agents to enter private premises covertly). In his attempt to argue that the state decision was contrary to Supreme Court caselaw, Vieux cites two cases: *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

At issue in *Gelbard* was a witness's attempt to invoke the statute to refuse to testify before a grand jury because any testimony would be based on illegally intercepted conversations. In the course of allowing this claim as a defense to the witness's contempt proceeding, the Court stated that unless "expressly authorized in [the statute] ... all interceptions of wire and oral communications are flatly prohibited." *Gelbard,* 408 U.S. at 46, 92 S.Ct. 2357. Vieux relies heavily on this simple statement in his attempt to convince us that Marquise's eavesdropping was improper. He neglects to acknowledge, however, that the use of a telephone in the "ordinary course of business" does not fall within the definition of a prohibited intercepting device, and anything overheard therefore would not be an interception. The quotation provides no assistance in resolving the issue before us and instead begs the question. No other language in *Gelbard* indicates in any way whether Marquise's eavesdropping should fall within the "ordinary course of business" exception or not.

*Giordano* provides equally little ammunition for Vieux's challenge. *Giordano* involved a motion to suppress evidence because the authority for a given wiretap did not come from one of the officials empowered to authorize electronic surveillance under the statute. Again Vieux highlights the Court's sweeping language, namely that "[t]he purpose of the legislation ... was effectively to prohibit ... all interceptions of oral and wire communications, except those specifically provided for in the Act," most notably law enforcement personnel acting under a court order. *Giordano,* 416 U.S. at 514, 94 S.Ct. 1820. And again, the quote fails to address the underlying question of whether Marquise's eavesdropping was not an interception because she used an extension telephone in the ordinary course of her business.

Hence the Supreme Court has not ruled directly on the scope of the ordinary business exception, and its more general pronouncements provide no guidance as to whether Marquise's eavesdropping was done in the "ordinary course of business." Consequently, we cannot say that the Massachusetts Appeals Court's decision that counsel was not deficient because the objection would be futile was "contrary to" Supreme Court caselaw.

We thus proceed to the second step of the inquiry: whether the state court ruling

was an "unreasonable application" of the Court's precedent. As we said in *O'Brien*, the issue "reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable." *O'Brien*, 145 F.3d at 25. To find the state decision unreasonable, it must be "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Id.*

In divining the reasonableness of the Appeals Court's decision, we start by noting that the scope of the "ordinary course of business" exception has been the subject of a significant split in authority.[3] Relying on legislative history concerning the extensive use of electronic surveillance in marital disputes, some courts have ruled that the intra-family use of an extension phone does not fall within the ordinary course of business exception, and hence any conversation heard by some family members when eavesdropping on other family members is inadmissible in court. *See, e.g., Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir.1989) (holding that no exception exists under federal wiretapping statute for instances of willful, unconsented-to electronic surveillance between spouses); *Pritchard v. Pritchard,* 732 F.2d 372, 374 (4th Cir.1984) (same); *United States v. Jones,* 542 F.2d 661, 673 (6th Cir.1976) (finding that the plain language of the statute and its legislative history compel the interpretation that the act includes interspousal wiretaps).

Other courts, concerned about intruding on intra-family matters better left to state law, have ruled that eavesdropping by family members on an extension telephone falls within the ordinary course of the family member's business and thus is not outlawed by the federal electronic surveillance statute. *See, e.g., Scheib v. Grant,* 22 F.3d 149, 153–4 (7th Cir.1994) (finding that father's monitoring and recording conversations between his child and his ex-wife was encompassed within the ordinary course of business exception); *Newcomb v. Ingle,* 944 F.2d 1534, 1535–36 (10th Cir.1991) (ruling that custodial parent's recording of child's conversations with non-custodial parent was not an illegal interception under the statute); *Anonymous v. Anonymous,* 558 F.2d 677, 679 (2d Cir.1977) (quoting testimony from the legislative history to the effect that "nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem"); *Simpson v. Simpson,* 490 F.2d 803, 810 (5th Cir.1974) (deciding that husband intercepting conversations between wife and another man did not fall within statute's prohibitions).

It seems to us that both positions are supportable. The Massachusetts Appeals Court's conclusion that an objection under the federal wiretapping statute would have been overruled was therefore not an "unreasonable application" of federal law.[4]

Let us be clear. We are not deciding that, were the question presented to us, Marquise's use of the telephone extension was done in the ordinary course of busi-

3. As we said in *O'Brien*, notwithstanding the statutory emphasis on Supreme Court caselaw, "reference to [factually similar decisions by inferior federal courts] is appropriate in assessing the reasonableness *vel non* of the state court's treatment of the contested issue." *O'Brien*, 145 F.3d at 25.

4. This case demonstrates precisely why claims must be analyzed under both the "contrary to" and the "unreasonable application" prongs. Hypothetically speaking, if all courts, in applying the Supreme Court's broad language, had determined that intra-family eavesdropping was a violation of the federal wiretapping statute, it is more likely that we would have found the Massachusetts Appeals Court's decision to be unreasonable, even though not actually "contrary to" the Court's pronouncements. This possibility arises entirely as a consequence of *O'Brien*'s appropriate statement permitting habeas courts to consider decisions by other inferior federal courts in the course of assessing whether the state decision was an unreasonable application of Court caselaw.

ness and thus was exempted from the federal wiretapping statute's restrictions.[5] Rather, we are holding only that the Massachusetts Appeals Court's decision to that effect was not "contrary to" or "an unreasonable application of" federal law. Consequently, its decision that Vieux's lawyer was not constitutionally ineffective for failing to object on that basis was equally not contrary to or an unreasonable application of federal law.[6]

In essence, Vieux wants us to announce our views as to the scope of the ordinary business exception, and then apply the result, if favorable to him, to his trial in state court three years ago. We refuse to do so. As we said in *O'Brien,*

> *Teague* taught that, apart from the Supreme Court, federal habeas courts ought not act as innovators in the field of criminal procedure, thereby upsetting state convictions because state courts were not prescient and thus failed to comply with federal law that did not exist at the time they ruled.

*O'Brien,* 145 F.3d at 23. This case falls precisely within that restriction. When confronted with Vieux's ineffective assistance of counsel claim, the Massachusetts Appeals Court issued a decision that cannot be deemed unreasonable in light of a healthy debate among a number of courts. We are powerless to grant Vieux's subsequent petition for the writ of habeas corpus.

*Affirmed.*

---

**5.** However, were the question, in fact, squarely before us, we note that this case, involving statements regarding an alleged crime against another family member, wouldn't be so close a question as one that fell within the scope of Congress's concern about evidence from wiretaps being used in marital disputes.

**6.** While the Massachusetts Appeals court did not reach the issue, we note, only in passing, that we believe Vieux also failed to establish prejudice, the other *Strickland* element. He claims that Marquise's testimony prejudiced him because it depicted him as cruel and insensitive. However, he himself had testified that during one of the phone calls he had turned on the speaker phone for the amusement of the other mechanics in the shop. This act alone demonstrated his callous nature; any harm from Marquise's eavesdropping was merely cumulative. Consequently, he has not shown that the failure to object to Marquise's testimony actually prejudiced his defense.