*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Manuel PALACIOS CUETO, Airman First Class
United States Air Force, Appellant

**No. 21-0357**
Crim. App. No. 39815

Argued May 10, 2022—Decided July 19, 2022

Military Judge: Matthew N. McCall

For Appellant: *Major Sara J. Hickmon* (argued); *Major Abhishek S. Kambli* and *Mark C. Bruegger*, Esq. (on brief).

For Appellee: *Major Cortland Bobczynski* (argued); *Colonel Naomi P. Dennis*, *Lieutenant Colonel Matthew J. Neil*, and *Mary Ellen Payne,* Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Senior Judge STUCKY joined.

————————

Judge MAGGS delivered the opinion of the Court.

In this appeal, we decide two assigned issues concerning the conduct of counsel during a general court-martial at which Appellant was found guilty of two specifications of abusive sexual contact. The first assigned issue is "[w]hether trial defense counsel were ineffective." In addressing this issue, Appellant faults his civilian defense counsel and trial defense counsel (hereinafter referred to collectively as defense counsel) for several deficiencies: failing to admit evidence of a potentially mitigating matter during sentencing; not advising him to address this and two other potentially mitigating matters in his unsworn statement; and not requesting tailored instructions regarding these matters. The second assigned issue is "[w]hether trial counsel committed prosecutorial misconduct when they stated that they represented 'the pursuit of justice' and argued justice would only be served if appellant was convicted and adjudged a sufficient punishment." Appellant contends that circuit trial

counsel and assistant trial counsel (hereinafter referred to collectively as trial counsel) made improper statements and may have caused the court-martial to find him guilty and to sentence him on considerations beyond the admitted evidence. For reasons explained below, we conclude that defense counsel were not ineffective and that any misconduct by trial counsel was harmless.

## I. Background

In May 2018, Appellant and Airman First Class (A1C) M.T. had drinks and dinner together at a restaurant in Boston and also had drinks at two bars. They then returned to Hanscom Air Force Base, where they both were stationed, and had more drinks. A1C M.T. became intoxicated. A video from a security camera in A1C M.T.'s dormitory hallway shows Appellant kissing A1C M.T. on the lips and following her into her room. A1C M.T. testified that she went to bed soon after entering her room, and that her last memory before falling asleep was feeling Appellant touching her stomach.

When A1C M.T. later awoke, she saw Appellant sleeping in her bed and wearing only his underwear. Suspecting that Appellant had sexually assaulted her, she directed him to leave her room and then promptly reported the incident. A medical examination revealed redness in her pubic area. A forensic examination later determined that Appellant's DNA was inside A1C M.T.'s underwear and shorts and that her DNA was on Appellant's underwear.

Appellant was charged with one specification of sexual assault and two specifications of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).[1] The sexual assault

---

[1] The version of Article 120 in the 2012 edition of the U.S.C. applies in this case because Appellant committed his offenses on May 27, 2018. Although Congress enacted amendments to Article 120, UCMJ, in 2016 and 2017 (which are reflected in the version of Article 120, UCMJ, included in the 2018 edition of the U.S.C.), the amendments do not apply to offenses committed before January 1, 2019. *See* National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114–328, §§ 5430(a)–(b) & 5542, 130 Stat. 2000, 2949, 2967 (Dec. 23, 2016); National Defense Authorization Act for Fiscal

specification accused Appellant of penetrating A1C M.T.'s vulva with his penis. One of the abusive sexual contact specifications accused Appellant of touching A1C M.T.'s stomach and thighs with his hand, while the other specification accused him of kissing her lips.

A general court-martial with officer and enlisted members tried Appellant. Following the close of evidence, the military judge gave the members standard instructions, the correctness of which are not contested in this appeal. The court-martial found Appellant not guilty of the sexual assault specification but guilty of both of the abusive sexual contact specifications.[2] The court-martial sentenced Appellant to reduction to the lowest enlisted grade, a bad-conduct discharge, and ninety days of hard labor without confinement. The convening authority disapproved the adjudged hard labor without confinement and took no other action on the sentence. The United States Air Force Court of Criminal Appeals (AFCCA) affirmed with one judge dissenting. *United States v. Palacios Cueto*, No. ACM 39815, 2021 CCA LEXIS 239, at *54, 2021 WL 1999440, at *19 (A.F. Ct. Crim. App. May 18, 2021) (unpublished); *id.* at *54–55, *78, 2021 WL 1999440, at *20, *28 (Meginley, J., dissenting in part and in the result). We provide further relevant background in discussing each of the assigned issues.

## II. Ineffective Assistance of Counsel

The first assigned issue is whether Appellant's defense counsel provided ineffective assistance of counsel in violation of the Sixth Amendment. Appellant alleges five specific deficiencies in defense counsel's performance: (1) "failing to advise Appellant to reference his pending sex offender status in his unsworn statements"; (2) "failing to advise Appellant to . . . reference [a] change in the law that removed his convicted offenses from the list of mandatory registerable sex offenses"; (3) "failing to seek a tailored instruction from the military judge explaining this extraordinary latter fact"; (4)

---

Year 2018, Pub. L. No. 115–91, §§ 1081(c)(1)(O) & (c)(4), 131 Stat. 1283, 1598 (Dec. 12, 2017).

[2] The court-martial found Appellant guilty of the second specification except the words "and thighs."

"failing to advise Appellant to reference [in his unsworn statement] the mandatory administrative separation he would face if a punitive discharge were not adjudged"; and (5) "failing to attempt to admit such evidence during sentencing." Appellant also argues that, even apart from these specific problems, "defense counsel's overall performance" in sentencing was deficient.

A. Standard of Review and Governing Law

This Court reviews de novo allegations of ineffective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)). To establish that ineffective assistance of counsel occurred, an appellant must prove both that the defense counsel's performance was deficient and that the deficiency caused prejudice. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). With respect to the first prong of this test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and "[a]s to the second prong, a challenger must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 689, 694).

As discussed below, most of Appellant's claims of ineffective assistance of counsel touch upon our decisions concerning "collateral consequences." A collateral consequence is " '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.' " *United States v. Miller*, 63 M.J. 452, 457 (C.A.A.F. 2006) (alteration in original) (quoting *Black's Law Dictionary* 278 (8th ed. 2004) (citing as 1999 in original)), *overruled in part* by *United States v. Riley*, 72 M.J. 115, 116–17 (C.A.A.F. 2013). "The general rule concerning collateral consequences is that 'courts-martial [are] to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration.' " *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988) (alteration in original) (quoting *United States v. Quesinberry*, 12 C.M.A. 609, 612, 31

C.M.R. 195, 198 (1962)). In *United States v. Talkington*, 73 M.J. 212, 213 (C.A.A.F. 2014), this Court held that a "[s]ex offender registration [requirement] is a collateral consequence of the conviction alone, not the sentence." The Court further held that "[w]hile an accused may raise a collateral consequence in an unsworn statement, . . . the military judge may instruct the members essentially to disregard the collateral consequence in arriving at an appropriate sentence for an accused." *Id.* (citations omitted).

## B. Additional Background and Discussion

Appellant's five assertions of deficient performance concern three subjects: sex offender registration requirements, a recent amendment to Article 120, UCMJ, and the possibility that the Air Force would administratively discharge Appellant if the court-martial did not sentence him to a punitive discharge. We address these subjects separately because they involve different considerations. We also address the overall performance of defense counsel in sentencing.

### 1. Sex Offender Registration Requirements

During the sentencing phase of the court-martial, Appellant made an oral unsworn statement and also submitted a written unsworn statement. In these unsworn statements, Appellant did not address sex offender registration requirements. Trial defense counsel, in his sentencing argument, also did not expressly address sex offender registration requirements. A few of trial defense counsel's remarks, however, touched upon this subject indirectly. Trial defense counsel specifically told the members that Appellant "is now a federal convict for the rest of his life, of a sexual assault offense," and he asked them to consider "what punishment is necessary beyond that."

The topic of sex offender registration first arose explicitly when the members were deliberating on the sentence. The members specifically asked the military judge whether Appellant would have to register as a sex offender. The military judge instructed them that "[u]nder DoD instructions, when convicted of certain offenses, including the offenses here, the accused must register as a sex offender with the appropriate authorities in the jurisdiction in which he

resides, works, or goes to school." But the military judge warned the members that the specific requirements are not predictable and that it was not their duty to attempt to predict them. The military judge added: "While the accused is permitted to address these matters in an unsworn statement, these possible collateral consequences should not [be] part of your deliberations in arriving at a sentence." Trial defense counsel did not object to these instructions or ask for additional instructions.

When Appellant raised the issue of ineffective assistance of counsel in his appeal to the AFCCA, the AFCCA ordered affidavits from Appellant's defense counsel. Civilian defense counsel did not recall what advice he had given Appellant regarding his unsworn statement but asserted that any issue raised by not including collateral consequences in the unsworn statement was cured by the members' question about sex offender registration. Trial defense counsel stated that he did not advise Appellant to mention federal sex offender registration requirements as part of his unsworn statement. The record contains no evidence that Appellant desired to discuss his sex offender registration requirements in his unsworn statements.

After receiving these affidavits, the AFCCA held that trial defense counsel were not deficient for failing to advise Appellant to discuss sex offender registration in his unsworn statement. *Palacios Cueto*, 2021 CCA LEXIS 239, at *38, 2021 WL 1999440, at *14. Relying on this Court's decision in *Talkington*, the AFCCA ruled that sex offender registration and administrative discharges are not proper considerations at sentencing. *Id.*, 2021 WL 1999440, at *14. The AFCCA further reasoned that "[t]rial defense counsel had no duty to inform the members of matters that are an improper consideration for sentencing, much less do so through their client's unsworn statement." *Id.,* 2021 WL 1999440, at *14. One judge dissented, concluding that defense counsel were deficient in not advising Appellant to mention sex offender registration. *Id.* at *76, 2021 WL 1999440, at *26 (Meginley, J., dissenting in part and in the result).

In his appeal to this Court, Appellant contends that his defense counsel had a duty to provide him guidance on unsworn statements based on their general obligation to act

in a client's best interest. He asserts that just as a defense counsel would be deficient for failing to caution a client against including information that might increase the sentence, defense counsel also would be deficient for failing to recommend that the client include information likely to decrease the sentence. Appellant acknowledges that the military judge could have tempered any remarks that he made about sex offender registration requirements with additional instructions. But he argues that the defense faced no risk in bringing these matters to the attention of the panel and that he might have benefitted by making the members aware of the impact sex offender registration would have on him personally. Appellant concludes that defense counsel's failure to advise him to address these matters was therefore unreasonable and consequently deficient.

We are not persuaded that defense counsel's performance was deficient. In determining whether an attorney's conduct was deficient we do not simply ask whether the attorney did everything possible that posed little or no risk to the client. Instead, as explained above, the test is whether "counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Scott*, 81 M.J. 79, 84 (C.A.A.F. 2021). In our view, defense counsel reasonably could have decided not to advise Appellant to mention sex offender registration requirements in his unsworn statements because mentioning them would prompt the military judge to "instruct the members essentially to disregard [such a] collateral consequence in arriving at an appropriate sentence for an accused." *Talkington*, 73 M.J. at 213. Indeed, the military judge gave just such an instruction to the members after they asked about sex offender registration. An attorney's decision to forego taking actions that likely would be futile is not deficient. *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999) ("Obviously, counsel's performance was not deficient if he declined to pursue a futile tactic."); *see also United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978) ("Counsel is not required to waste the court's time.").

### 2. The Amendment to Article 120, UCMJ

Appellant's second and third assertions of deficient representation concern a recent amendment to Article 120, UCMJ. At the time that Appellant committed his abusive

sexual contact offenses, Article 120(g)(2)(B), UCMJ, defined "sexual contact" to mean "any touching . . . either directly or through the clothing, of any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person." 10 U.S.C. § 920(g)(2)(B) (2012). Under this definition, Appellant committed a sexual contact when he touched A1C M.T.'s stomach and kissed her on the lips with the requisite intent. But a recent amendment to Article 120, UCMJ—which applies only to offenses committed on or after January 1, 2019—has changed the definition of "sexual contact." Under the new definition, sexual contact now must involve the touching of "the vulva, penis, scrotum, anus, groin, breast, inner thigh, or buttocks." Article 120(g)(2), 10 U.S.C. § 920(g)(2) (2018). The revised definition would not cover the touching of a person's stomach or lips. Accordingly, if Appellant had kissed and touched A1C M.T. in 2019 instead of in 2018, his actions would not have constituted abusive sexual contact, and consequently he would not have to register as a sex offender.

Appellant did not mention the amendment to Article 120, UCMJ, in either of his unsworn statements. Trial defense counsel also did not address the amendment in his sentencing argument and did not request an instruction regarding the amendment. The military judge did not instruct the panel about the amendment. In addition, neither counsel mentioned this issue in the affidavits that they provided to the AFCCA. The AFCCA also did not address this issue in its majority opinion. But in his separate opinion, Judge Meginley concluded that defense counsel were deficient because they did not advise Appellant to discuss this amendment in his unsworn statement and he also concluded that this deficiency was prejudicial. *Palacios Cueto*, 2021 CCA LEXIS 239, at \*67, 2021 WL 1999440, at \*24 (Meginley, J., dissenting in part and in the result).

In his briefs before this Court, Appellant argues his counsel were deficient for failing to advise him to mention the change in the law in his unsworn statement. He also argues that defense counsel were deficient in failing to seek a tailored

instruction from the military judge.[3] He asserts that providing a complete explanation of the amendment to Article 120, UCMJ, would have helped him at sentencing because the explanation might have dispelled the members' potentially erroneous beliefs about the seriousness of Appellant's offenses.

We are not persuaded. Even if Appellant faced little risk in mentioning the amendment to Article 120, UCMJ, we cannot say that defense counsel were deficient for failing to advise him to address it. If Appellant had mentioned the amendment in his unsworn statement, the military judge would have been correct in instructing the members that the amendment to the law does not apply to Appellant because it had not yet gone into effect and that the members must follow the preamended law in sentencing Appellant. *United States v. Barrier*, 61 M.J. 482, 484 (C.A.A.F. 2005) (holding that an accused's unsworn statement "may be tempered by appropriate instructions from the military judge"); *United States v. Lilly*, 25 M.J. 403, 406 (C.M.A. 1988) (explaining that amendments to the law that do not apply to the accused are irrelevant). Such an instruction would have reduced or eliminated the possible benefit from mentioning the change in the law. As explained above, attorneys do not need to undertake futile acts. Defense counsel thus reasonably could decide not to advise Appellant to address the amendment in his unsworn statement.

### 3. Administrative Discharge

The parties generally agree that under Air Force Instruction 36-3208, if a court-martial finds an accused guilty of a sex offense but does not sentence the accused to a punitive discharge, the Air Force would still discharge the accused administratively unless the accused seeks and obtains a waiver. Dep't of the Air Force, Instr. 36-3208, Administrative Separation of Airmen para. 5.55.3.2 (July 2, 2013) (incorporating through Change 7 to Instr. 36-3208, July 9, 2004). In his unsworn statements, Appellant did not discuss this Air Force Instruction or the very likely possibility that the Air Force would discharge him administratively if the

---

[3] Appellant does not specify what such an instruction might have said.

court-martial did not sentence him to a punitive discharge. Appellant also did not expressly ask the members to allow him to stay in the Air Force but he did ask the members to consider "how much the Air Force means to me" and he did stress that the Air Force is "a way for me to help my sick brother."

Trial defense counsel, in his sentencing argument, did not expressly mention the Air Force Instruction but he did tell the members that Appellant "doesn't need a discharge from the military." He asked the members for a "situation where [Appellant] can make a life here in this country." He added: "a dishonorable or a bad[-]conduct discharge, it's not that." In the affidavits that they submitted to the AFCCA, defense counsel did not discuss the issue of administrative discharges. The AFCCA held that their performance was not deficient, concluding that administrative discharges, like sex offender registration requirements, were collateral consequences under *Talkington* and were not proper considerations at sentencing. *Palacios Cueto*, 2021 CCA LEXIS 239, at *38, 2021 WL 1999440, at *14.

In his briefs before this Court, Appellant asserts that under *Talkington*, a court-martial may consider at sentencing collateral matters that are a "possible result of the *sentence itself*, as opposed to the *conviction*." 73 M.J. at 217. For example, a court-martial may consider the possible loss of retirement benefits that follow from a punitive discharge. *Id.* Applying this principle to this case, Appellant argues that he faced a mandatory administrative discharge *as a result of his sentence* because the Air Force Instruction at issue requires a mandatory discharge if *his sentence* does not include a punitive discharge.[4] He therefore contends that his mandatory discharge was a proper matter for the panel to consider and his defense counsel were deficient for not attempting to admit evidence of the mandatory discharge, for not advising him to discuss the Air Force Instruction in his

---

[4] The Government disagrees with this interpretation of the Air Force Instruction, asserting that the administrative discharge is triggered only by the offense and not the sentence. We need not resolve this disagreement because we reject Appellant's theory on other grounds explained below.

unsworn statement, and for not seeking a tailored instruction addressing the subject.[5] He asserts that he was prejudiced by this deficiency because telling the panel about the required administrative discharge would have dispelled the members' possible "erroneous belief that should they not adjudge a punitive discharge, Appellant would remain in the Air Force."

We cannot accept this argument because a key step of Appellant's reasoning is flawed. Although Appellant asserts that the Air Force Instruction would make an administrative discharge "mandatory" if he did not receive a punitive discharge, he recognizes—in a footnote—that this is not actually so. The Air Force Instruction does not make administrative discharges mandatory because the Instruction permits a person convicted of a sex offense to apply for a waiver. Appellant contends that the provisions on waiver do not matter in this case because a waiver here would be out of the question. He explains that the Air Force Instruction makes waivers dependent on several criteria, including the views of the victim, and a waiver here would "never be an option for him due to A1C M.T.'s continued animosity."

We have no reason to question Appellant's good faith in predicting that he would not obtain a waiver. But we do not see how a military judge could determine whether an administrative discharge would occur based on the Air Force Instruction without holding a trial within a trial, and even such a trial within a trial could produce only a speculative result. We think that this makes administrative discharges different from the loss of retirement benefits. As such, we cannot conclude that defense counsel were deficient for failing to address them in the manner that Appellant now says they should have.

4. Overall Performance of Defense Counsel in Sentencing

Finally, we consider Appellant's argument that defense counsel's overall performance in sentencing was deficient within the meaning of *Strickland* even if his specific assertions of deficient performance lack merit. *See United States v. Loving*, 41 M.J. 213, 252 (C.A.A.F. 1994), *aff'd,* 517

---

[5] Appellant does not indicate in his briefs what this tailored instruction would say.

U.S. 748 (1996) (considering such an argument). Perhaps in a rare case an attorney's overall performance could be deficient even though the attorney did not make specific errors. *See, e.g.*, *People v. Raosto*, 50 A.D.3d 508, 509 (N.Y. App. Div. 2008) (holding that a defense counsel's overall performance was deficient where the defense counsel "displayed general carelessness and inattention throughout the trial," "appeared to be confused," and was generally unsuccessful in cross-examining witnesses). But such cases usually would arise only when "the defendant can point to a long series of questionable omissions by counsel" that "were not simply the product of human fallibility, but the result of a lack of conscientious effort." Wayne R. LaFave et al., *Criminal Procedure* § 11.10(c) (4th ed. 2015). Reviewing the entire record, we see nothing like that here.

Because defense counsel were not deficient in their performance, we need not address the question of prejudice. We hold that Appellant did not have ineffective assistance of counsel under the *Strickland* standard.

### III. Prosecutorial Misconduct

Appellant separately argues that this Court should set aside the findings and sentence in this case because the trial counsel engaged in prosecutorial misconduct by repeatedly referring to "justice" when speaking to the members.

### A. Additional Background

Appellant's brief addresses eight instances in which trial counsel made an appeal or reference to "justice":

(1) During initial voir dire, the circuit trial counsel introduced himself to the members detailed to the court-martial by saying: "Good morning, panel members. My name is [G.F.]. I'm the circuit trial counsel and I'm stationed at Langley Air Force Base. I am TDY here to represent the United States of America in the pursuit of justice in this case."[6]

---

[6] The court-martial took place at Hanscom Air Force Base in Massachusetts. Langley Air Force Base is in Virginia. The abbreviation "TDY" refers to being on temporary duty at a location other than a permanent duty station.

(2) Additional members later were detailed to the court-martial. During the ensuing additional voir dire, circuit trial counsel again introduced himself to the new members by saying: "I'm TDY here to represent the United States of America in the pursuit of justice in this case."

(3) During his opening statement, circuit trial counsel said to the members: "Now I ask you all to repair the little that can be repaired and bring justice to [A1C M.T.] by finding the accused guilty of all charges and specifications that he faces today."

(4) During his argument on the findings, circuit trial counsel stated to the members: "And you will have the ultimate decision on what happened in this case and whether justice will be served, or whether the accused will be acquitted."

(5) Also during the argument on findings, circuit trial counsel commented that "[t]he government has no obligation to prove its case with 100 percent mathematical certainty. The world doesn't work like that. If that were the standard, there would be no justice."

(6) In response the circuit trial counsel's statement that the court-martial had to choose between serving justice or finding Appellant not guilty, Appellant's civilian defense counsel argued that the Government was presenting a "false choice." He stated:

> I sat there at the table and I listened to the prosecutor at the beginning of his closing statement utter words that should never come out of a prosecutor's mouth. He gave you a false choice. He said, "You can render justice and find him guilty, or you can find him not guilty."

During rebuttal argument, circuit trial counsel said in reply:

> It's not a false choice. It's a simple choice: guilty or not guilty. And that decision has to be based upon the evidence and the law. And when that decision is made, that's what we call justice. And the evidence in this case supports guilt beyond a reasonable doubt. That's not a false choice. That is justice. And that is what the evidence requires you to do in this case.

(7) During sentencing argument, assistant trial counsel told the members: "I said you all had a duty, you all had a responsibility to find justice in this case. And there is no justice without an appropriate punishment."

(8) Also during sentencing, assistant trial counsel told the members: "A sufficient punishment that will bring justice here to this case, and that will bring some form of closure to [A1C M.T.] for all that she has . . . endured in this year-and-a-half nightmare . . . . [is] two years of confinement, reduction to the grade of E-1, and a dishonorable discharge."

Civilian defense counsel did not object to any of these statements. But as described above, civilian defense counsel did respond to the fourth statement during his argument on findings. The military judge gave the members a standard instruction that "[a]rgument is made by counsel to assist you in understanding and evaluating the evidence, but you must base the determination of the issues in this case on the evidence as you remember it, and apply the law as I instruct you." Appellant does not challenge the instructions in this case.

On appeal, the AFCCA reasoned that a trial counsel's use of the word "justice" was neither always an error nor always permissible. The AFCCA explained:

> A prosecutor may argue that justice is required. However, a prosecutor should be careful not to confuse the jury by conflating "justice" and "criminal conviction." "Justice" must be tethered to the evidence and the burden of proof lest it be confused with justice for the victim or society or the military justice system.

*Palacios Cueto*, 2021 CCA LEXIS 239, at *54, 2021 WL 1999440, at *19. Applying these principles, the AFCCA concluded that the assistant trial counsel's opening statement and the circuit trial counsel's closing argument were improper. *Id*. at *48–49, 2021 WL 1999440, at *18. After finding these comments amounted to obvious error, the CCA applied the prejudice factors from *United States v. Fletcher*, 62 M.J. 175 (C.A.A.F. 2005), and found that the misconduct was "moderately severe," several curative measures were taken, and the weight of the evidence supporting the conviction was "moderate." *Id*. at *50–52, 2021 WL 1999440,

at *18–19. It then applied the harmlessness beyond a reasonable doubt standard and found no prejudice. *Id.* at *52–54, 2021 WL 1999440, at *19. One judge dissented, concluding that trial counsel had committed prejudicial prosecutorial misconduct. *Id.* at *54–55, 2021 WL 1999440, at *20 (Meginley, J., dissenting in part and in the result).

### B. Governing Law and Standards of Review

The Rules for Courts-Martial (R.C.M.) authorize trial counsel to speak directly to the members during voir dire, *see* R.C.M. 912(d); when making an opening statement, *see* R.C.M. 913(b); when making an argument on the findings, *see* R.C.M. 919(a); and when making argument on sentencing, *see* R.C.M. 1001(h). What trial counsel may say while speaking to the members is subject to various limitations. *See, e.g.*, *Fletcher*, 62 M.J. at 179–84 (listing numerous kinds of improper comments); R.C.M. 912(d) Discussion (explaining that "counsel should not purposely use voir dire to present factual matter which will not be admissible or to argue the case"); R.C.M. 919(b) Discussion (explaining that "[c]ounsel should not express a personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt or innocence of the accused, nor should counsel make arguments calculated to inflame passions or prejudices"). Making statements that violate these limitations can be one form of "prosecutorial misconduct." *Fletcher*, 62 M.J. at 179; *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (defining "[p]rosecutorial misconduct" as "action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon").

In some cases, improper comments may not only violate an R.C.M. but also may result in a constitutional violation. The Supreme Court's decision in *Taylor v. Kentucky*, 436 U.S. 478 (1978), is illustrative. In that case, a prosecutor improperly made arguments based on evidence not in the record and improperly suggested that the defendant's indictment was evidence of his guilt. *Id.* at 486–88. The Supreme Court held that the defendant had been denied due process because the trial judge had not corrected these errors. *Id.* at 490; *see also Fletcher*, 62 M.J. at 185 (holding that "trial counsel's statements were so inflammatory and damaging

that we cannot be confident that the members convicted Fletcher on the basis of the evidence alone").

No specific rule prohibits trial counsel from using the word "justice" when speaking to the members. But "a court-martial must reach a decision based only on the facts in evidence." *Fletcher,* 62 at 183. Accordingly, we agree with the well-phrased reasoning of the AFCCA: "[A] prosecutor should be careful not to confuse the jury by conflating 'justice' and 'criminal conviction.' 'Justice' must be tethered to the evidence and the burden of proof lest it be confused with justice for the victim or society or the military justice system." *Palacios Cueto,* 2021 CCA LEXIS 239, at *54, 2021 WL 1999440, at *19. Similarly, trial counsel should not use the word "justice" to imply that sentencing should be based on unauthorized considerations. *See* R.C.M. 1002(f) (listing permissible considerations).

Appellate judges must exercise care in determining whether a trial counsel's statement is improper or has improper connotations. The Supreme Court has emphasized that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974). A statement that might appear improper if viewed in isolation may not be improper when viewed in context. *Id.* at 645. And even if a statement is improper, it may not be sufficiently prejudicial, in the context of the entire trial, to violate the accused's due process rights. *Id.* at 642–43.

When a party does not object to comments by the prosecutor during voir dire, opening statement, argument on the findings, or argument on the sentence, we review for plain error. *United States v. Nieto,* 66 M.J. 146, 147 (C.A.A.F. 2008) (reviewing statement made during voir dire for plain error); *United States v. Clark,* 69 M.J. 438, 443 (C.A.A.F. 2011) (same for opening statement and argument on findings); *United States v. Erickson,* 65 M.J. 221, 223 (C.A.A.F. 2007) (same for sentencing argument). Under plain error review, Appellant bears the burden of demonstrating that: "(1) there was error, (2) the error was [clear] and obvious, and (3) the error materially prejudiced a substantial right of the accused."

*United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (internal quotation marks omitted) (citation omitted).

For nonconstitutional errors, this Court may grant relief only if "the error materially prejudice[d] the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018); *United States v. Hamilton*, 78 M.J. 335, 342–43 (C.A.A.F. 2019). In *Fletcher*, this Court asserted that the best approach for assessing the prejudice from prosecutorial misconduct "involves a balancing of three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184.

The prejudice analysis is different if the errors involve constitutional rights. If a constitutional error is "structural," then reversal is automatic. *Neder v. United States*, 527 U.S. 1, 8 (1999) (identifying denial of counsel, a biased trial judge, a defective reasonable doubt instruction, and other errors as structural). If a constitutional error is nonstructural, then under our precedent, the Government must prove that the error was harmless beyond a reasonable doubt even on plain error review. *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019).

## C. Discussion

As quoted above, trial counsel referred to "justice" in eight statements. Two of these statements do not strike us as problematic. Trial counsel tethered justice to the evidence when he said during rebuttal argument: "It's a simple choice: guilty or not guilty. And that decision has to be based upon the evidence and the law. And when that decision is made, that's what we call justice." And during his sentencing argument, trial counsel did not err when he defined justice to mean "an appropriate punishment," saying: "I said you all had a duty, you all had a responsibility to find justice in this case. And there is no justice without an appropriate punishment." Most military judges give members a comparable instruction. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 8, § III, para. 8-3 (2020) ("As court members, it is your duty to hear the evidence and . . . to adjudge an appropriate sentence."). In addition, R.C.M. 1002(f)(3)(C) directs courts-martial to take "into

consideration . . . the need for the sentence to . . . provide a just punishment for the offense."

But the other six references to justice are not so easily dismissed. If we were to review these other statements *in isolation*, each of them would raise significant concerns. The members might have understood the twice-repeated statement during voir dire—"I'm here . . . in the pursuit of justice in this case"—to imply that Appellant's defense counsel were not there to pursue justice. The members might have understood trial counsel's request in his opening statement—"repair the little that can be repaired and bring justice to [A1C M.T.] by finding the accused guilty"—to mean that members should focus on providing relief to A1C M.T. rather than assessing the evidence. The members similarly might have understood trial counsel's first remark during his findings argument—"you will have the ultimate decision . . . whether justice will be served, or whether the accused will be acquitted"—to mean that they should focus on justice rather than on the evidence. And both this remark and the other statement during findings ignore the Government's burden of proving guilt. Finally, the second mention of justice during sentencing argument—"[A] sufficient punishment . . . will bring some form of closure to [A1C M.T.] for all that she has . . . endured in this year-and-a-half nightmare"—may have misguided the members. A court-martial certainly may consider "the *impact of the offense* on . . . [the] psychological well-being of any victim." R.C.M. 1002(f)(2)(A) (emphasis added). But a court-martial should not consider how *the sentence* would affect the victim. *See United States v. Davis,* 39 M.J. 281, 283 (C.M.A. 1994) (holding that a question about how the victim would feel if the accused received no punishment was improper because the "question does not call for impact testimony based upon the offense but rather calls for impact testimony based upon the judicial process"). Indeed, even counsel for the Government agreed at oral argument that at least some of what trial counsel said, *if viewed in isolation*, would be improper.[7]

---

[7] As noted above, the circuit trial counsel on two occasions used nearly identical language to introduce himself to the members detailed to the court-martial. He stated: "[I am] TDY here to represent the United States of America in the pursuit of justice in

The Government, however, makes three responses. First, the Government argues that this Court should not view trial counsel's statements in isolation, but instead under *Donnelly*, 416 U.S. at 637, must view them in context. Second, the Government argues that, in viewing the six problematic statements, we should not ascribe to them the "most damaging meaning . . . from the plethora of less damaging interpretations." *Id.* at 647. Third, the Government argues that even if some statements were improper, the AFCCA was still correct in concluding that any error was harmless under the *Fletcher* factors.

Of these three arguments, the Government appears to place the most emphasis on the third, as did the AFCCA. We think this is the most straightforward way to resolve the assigned issue. Under plain error review, we will assume without deciding that the six statements discussed above were all in error without getting into the Government's arguments that some of them might not have been error because context showed that they had a permissible meaning. We will further assume that the errors were plain and obvious. We then will test for prejudice using the *Fletcher* factors identified above: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. at 184.

We agree with the AFCCA's conclusion that the misconduct was "moderately severe." The Government made multiple references to "justice" that were presumably improper for the reasons explained above. But while this misconduct occurred repeatedly, it was, in our judgment, not as severe as the misconduct that this Court unfortunately has seen in other cases. *See, e.g., United States v. Norwood*, 81 M.J. 12, 21 (C.A.A.F. 2021) (finding that it was improper for the prosecution to vouch for the victim and to tell the panel to consider how they would be perceived by others based on their decision); *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (finding misconduct after the prosecution attacked the

---

this case." We concur with Government appellate counsel who laudably conceded at oral argument that this statement, at a minimum, amounted to "a bit [of] grandstanding."

defense counsel, attacked the accused, expressed personal opinions, bolstered, and vouched); *United States v. Sewell*, 76 M.J. 14, 17–19 (C.A.A.F. 2017) (finding it was improper for the prosecution to use character evidence to show the accused was a "deviant" for a propensity purpose); *United States v. Frey*, 73 M.J. 245, 249 (C.A.A.F. 2014) (finding it was improper for the prosecutor to argue the panel should, "in lieu of evidence," apply knowledge of the "ways of the world" for sentencing)*; see also Berger v. United States,* 295 U.S. 78, 84 (1935) (listing numerous egregious prosecutorial acts).

We also agree with the AFCCA that effective curative measures were taken. The military judge gave the members complete and correct instructions and informed the members that these instructions should control their deliberations. Civilian defense counsel also effectively responded to most of what trial counsel said, especially with respect to the suggestion that justice required a finding of guilt.

Finally, we agree with the AFCCA that the weight of the evidence supporting the conviction was "moderate." A1C M.T. testified about what happened with respect to the offense of which Appellant was found guilty. A video partially corroborated her testimony by showing Appellant kissing her and entering her room. The medical and forensic evidence was not inconsistent with A1C M.T.'s testimony, although it did little or nothing to prove the offenses of which Appellant was found guilty. The panel members also gave a sentence that does not appear to have resulted from inflamed passions. Based on all of these factors, we cannot conclude that Appellant suffered material prejudice to a substantial right.

The only question remaining is whether the improper statements violated Appellant's constitutional rights and therefore require us to determine whether they were harmless beyond a reasonable doubt. In some cases, as noted, uncorrected statements by a prosecutor may lead to a violation of due process if the judge does not adequately correct them. *See, e.g., Taylor v. Kentucky,* 436 U.S. at 490. But in this case the military judge gave proper instructions that lead us to conclude that any error that occurred was not constitutional in dimension. Accordingly, the harmlessness beyond a reasonable doubt standard does not apply.

## IV. Conclusion

The judgment of the United States Air Force Court of Criminal Appeals is affirmed.